MALCOLM, Jr. *v.* STATE

[No. 354, September Term, 1962.]

*Decided July 3, 1963.*

The cause was argued before HENDERSON, HAMMOND, PRES-COTT, HORNEY and MARBURY, JJ.

*Charles A. Friedman,* with whom were *David Friedman, Friedman & Friedman* on the brief, for appellant.

*Stuart H. Rome, Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General, William J. O'Donnell, State's Attorney,* and *George J. Helinski, Assistant State's Attorney,* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

Appellant was found guilty of robbery by a judge of the Criminal Court of Baltimore, sitting without a jury, and sentenced to not more than three years' confinement. He appeals.

The principal question involved is the sufficiency, *vel non,* of the evidence.

On September 8, 1962, the prosecuting witness, one Cecil

Humphries some thirty-seven years of age, and the appellant, a youth of about eighteen, "struck up" an acquaintance in front of the Alcazar Hotel. This was sometime after 2:00 a.m., and the bars had closed. After a short time, Humphries invited appellant to his small apartment: one room, small kitchen and bath. Appellant was given food and beer and invited to spend the night, which he did.

When leaving on the following morning, appellant was invited to return and visit with Humphries. That evening Humphries returned to his apartment about 10:00 p.m. "No sooner [than he] cut the light on" somebody knocked on his door. At the door, he found appellant and two other youths of about the same age as appellant. One was named Vaughn; the other was called "Don"; and both were unknown to Humphries. After watching television and drinking Humphries' beer for about one-half an hour, Don, suddenly and without saying a word, walked over and struck Humphries several severe blows in his face, causing blood to flow from his nose and mouth. Don took a butcher's knife from a drawer and held it at Humphries' throat, stating that he belonged to a gang, and, if Humphries said anything to the police, Don would "get" him later. Don told Vaughn to tie Humphries' legs and arms, which he did. Vaughn then took Humphries' watch and ring and twenty-two dollars (he also missed several shirts and an electric shaver after the boys left). Humphries testified that Vaughn and the appellant took his beer out of the ice box, while Don had the knife at his throat, and placed it in a bag, which they took with them when they left. He also said he couldn't see what Vaughn and appellant were doing during the entire time that Don had the knife at his throat. When asked on cross-examination what appellant was "doing while this other man [Don] had the knife at your throat," he replied: "He was setting in the chair behind me." The inquiry was not pursued further. Humphries scarcely could have intended to convey the thought that appellant was seated behind him during the entire time that Don was holding the knife in a threatening position (as appellant would like us to interpret the testimony), since he had already testified that Vaughn and appellant had placed his beer in the bag. Shortly thereafter, Vaughn and ap-

pellant went out the door closely followed by Don, leaving Humphries with his legs and arms tied. He hobbled to a nearby apartment where the occupant released him and called the police.

Appellant and Vaughn were tried jointly. Vaughn had made a statement, which implicated appellant. At the request of appellant, this statement was admitted only as against Vaughn. Appellant now contends that the trial judge wrongfully considered this statement as being evidence against him.

There can be little doubt that it is improper for the trier of facts, when two or more defendants are being jointly tried for a criminal offense and proper objection has been made, to consider the statement of one as implicating the others. The reason, of course, is that such action violates the hearsay rule; and an accused would be denied the right to cross-examine his accuser. But the short answer to this contention of the appellant is that there is nothing in the record that even remotely suggests that the trial judge used Vaughn's statement to convict the appellant; hence this contention falls and avails him nothing.

We turn now to the main question. Everyone accused of crime in this State is presumed to be innocent, and, in order to warrant a finding of guilt, it is incumbent upon the State affirmatively to establish the defendant's guilt beyond a reasonable doubt. *Johnson v. State,* 227 Md. 159, 175 A. 2d 580. Presence of the accused at the scene of the crime is a significant circumstance in determining guilt or innocence, *Tasco v. State,* 223 Md. 503, 165 A. 2d 456; but presence at the place where a crime has been committed is not sufficient, alone, to establish participation in the perpetration thereof. *Watson v. State,* 208 Md. 210, 117 A. 2d 549. However, in reviewing the sufficiency of the evidence to support a conviction below, it is not necessary that the Court of Appeals be convinced of the accused's guilt beyond a reasonable doubt, *Butz v. State,* 221 Md. 68, 156 A. 2d 423, *Johns v. State,* 221 Md. 456, 157 A. 2d 926; our function is merely to decide whether there was evidence, or proper inferences therefrom, on which the trial court could base a finding of guilt. *Butz v. State, supra; Holtman v. State,* 219 Md. 512, 150 A. 2d 223.

The evidence and the rational and reasonable inferences that can properly be drawn therefrom are sufficient, we think, to support the finding of guilt. The appellant was the only one of the three youths who had known Humphries prior to September 9th; the time and manner of their becoming acquainted were unusual; the knock on the door so soon after Humphries' return to his apartment suggested to the trial court that the youths had been awaiting his return; and the unusual conduct of "Don" in striking the prosecuting witness several severe blows in the face and holding the knife at his throat without a word of warning to Humphries or consultation with his companions (when considered with all of the surrounding circumstances) was sufficient to support a reasonable inference that the three had planned to take Humphries' property before they entered his apartment. In addition, there was not the slightest remonstrance on the part of the appellant relative to this strange and unusual conduct of "Don," even though he had brought "Don" to the apartment. Furthermore, the prosecuting witness' testimony to the effect that appellant and Vaughn took the beer out of the ice box, placed it in a bag and took it with them is direct evidence of appellant's participation in the robbery. And another significant fact is that appellant and his two companions left the apartment apparently in concert at, or about, the same time. As stated above, the evidence and proper inferences therefrom were sufficient to support the conviction.

*Judgment affirmed.*

HAMMOND, J., filed the following dissenting opinion.

The testimony in the case could not, as I read it, have permitted the trial judge properly to have been convinced beyond a reasonable doubt that Malcolm, the appellant, was guilty of the crime of robbery.

On the night before the robbery, Malcolm went to the apartment of the victim Humphries, drank beer, and because, in the words of Humphries, "he didn't have no place to stay," was invited to spend the night, which he did. He was invited to come back. He did so the next night with two companions, one named Don and one named Vaughn. At Humphries' invita-

tion they drank beer and whisky, ate sandwiches and watched television. This went on for several hours. At one point Vaughn repulsed homosexual advances by Humphries. Then Don and Vaughn went in the bathroom for a few minutes. When they came out, Don hit Humphries in the face, put a knife at his Adam's apple, and he and Vaughn took money from his pocket and various articles from the apartment. Vaughn says Don acted as he did because he had been "drinking so heavy."

Humphries testified that while all this was going on, Malcolm, the appellant, was sitting in a chair. Humphries' statement, which the majority says was that Malcolm and Vaughn took some of his beer while Don had the knife at his throat, was equivocal. The most that can fairly and permissibly be gleaned from it is that either Vaughn or Malcolm took the beer, and, in the face of Humphries' flat statement that Malcolm sat in the chair during the occurrence, it must have been Vaughn who did the taking.

The hypothesis of the trial court and the majority that the three plotted the robbery and were led to the apartment by Malcolm for the purpose of effecting it and that Malcolm aided and abetted the active participants is no more plausible or likely to have been correct than the hypothesis that the three went to Humphries to "free-load" drink and food, that while there, Don and Vaughn, under the influence of drink or revulsion at Humphries' sexual tendencies, or both, agreed while in the bathroom together to beat and rob him, and did so, without Malcolm having had any prior knowledge they were going to do so. There having been an equal choice between the hypotheses, with the second at least as probable as the first, the State did not show guilt beyond a reasonable doubt. Malcolm's failure to protest or to aid the victim or to call the police was unworthy, and perhaps cowardly, but this would not constitute the omissions a crime. *Watson v. State,* 208 Md. 210, 219. There was no testimony admitted against Malcolm showing he was active in any way in the assault and robbery or that he shared the fruits of the crime.

I would reverse.