866 A.2d 129

**Lionel BROGDEN**

v.

**STATE of Maryland.**

**No. 55, Sept. Term, 2004.**

Court of Appeals of Maryland.

Jan. 18, 2005.

Martha Weisheit, Assistant Public Defender (Stephen E. Harris, Public Defender, Baltimore), on brief, for petitioner.

Shannon E. Avery, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, Baltimore), on brief, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, GREENE, JJ.

CATHELL, J.

This case concerns the propriety of a trial court's response in supplemental jury instructions to questions posed by the jury. Basically, we are considering whether it was reversible error for the trial court to explain to the jury a defense and its effect on the burden of proof as to a particular charge, where that defense was never proffered by the defendant, Lionel Brogden, petitioner.

On February 24, 2003, petitioner was tried by a jury in the Circuit Court for Baltimore City on the charges of burglary in the first degree, malicious destruction of property, and wearing, carrying or transporting a handgun. Petitioner presented

no defense at the close of the State's case-in-chief. That same day, petitioner was convicted of first degree burglary and carrying a handgun but was acquitted of malicious destruction. He was thereafter sentenced by the trial court to twenty years incarceration for the burglary, all suspended except ten years. A three-year sentence was imposed for the handgun conviction.

Petitioner thereafter appealed the decision to the Court of Special Appeals of Maryland and, as relevant here, challenged, *inter alia*, the propriety of the trial court's supplemental jury instructions in respect to the handgun charge and the sentence in respect to that charge.[1]  On April 16, 2004, the intermediate appellate court, in an unreported opinion, affirmed the trial court's judgment. Petitioner thereafter filed a Petition for Writ of Certiorari to this Court. On August 25, 2004, we granted the petition. *Brogden v. State,* 382 Md. 687, 856 A.2d 723 (2004). Petitioner presents the following questions for our review:

"1. Is it improper to instruct the jury regarding a defense to a crime, when no evidence supporting that defense has been introduced and the accused objects to the instruction?

2. Did the Court of Special Appeals err in holding that the trial court's instruction on the licensing exception to the handgun statute was correct, and in any event harmless, when that instruction placed the burden of proof on the defense?

3. Should [petitioner's] sentences be construed to run concurrently as a matter of law where the sentence imposed for the second conviction was made consecutive to the sentence [petitioner] was then serving and [petitioner] was not serving any other sentence at the time of disposition?" [Alterations added.]

---

1. An additional question to the Court of Special Appeals concerned the propriety of the trial judge's action of refusing to allow two voir dire questions to be asked of the prospective jurors. That question was not presented in the Petition for Writ of Certiorari. Accordingly, it is not before us.

We hold that the trial judge's action of giving supplemental instructions, over petitioner's objection, to the jury during its deliberations, in which the trial judge discussed a possible defense theory as to a particular count that was entirely inapplicable to that count as presented, had never been proffered by the petitioner, and alluded to that defense as placing a burden of proof on petitioner, constitutes error on the part of the trial court. We further hold that this error, which only relates to petitioner's conviction on the charge of petitioner "wearing, carrying or transporting" a handgun and not his burglary conviction, was not harmless as to that handgun charge.

## Facts

On May 11, 2002, police responded to a 9–1–1 call reporting a burglary at 1603 West Lombard Street in Baltimore City. The call was made by Ms. Laticia Hawkins, who reported that upon arriving at her home around 7:30 or 8:00 p.m. she found that her apartment had been broken into and burglarized. According to Hawkins' testimony at trial, she had opened the outer door to her apartment when she heard a noise come from inside the apartment, which had been secured when she had left earlier in the evening. As Hawkins began to back out of the building, a male intruder opened the door to her apartment, pulled out a handgun and pointed it in her direction as he ran away. The intruder was clutching a bag while fleeing the scene and Hawkins later learned that several compact discs, a video camera and a VCR were missing from her apartment. She also noticed in her apartment a metal crowbar that did not belong to her and presumably was used to effect entry into her apartment.

After a May 14, 2002 interview with Hawkins, Detective Thomas McDonald caused an arrest warrant to issue for petitioner based on information obtained during that interview.[2] Petitioner was then arrested. At trial in the Circuit

---

2. Hawkins stated during this interview with Detective McDonald that she recognized the intruder in her apartment as petitioner, who was a former neighbor who lived in the same apartment building.

Court for Baltimore City, Hawkins identified petitioner as the intruder she had encountered on May 11, 2002, and testified that she recognized him as a former neighbor who had once lived in the same apartment building. After the State's case-in-chief, the defense rested without presenting any evidence.

During jury deliberations, the jury sent a note to the trial judge asking for clarification on two points: first, whether it was a crime to have a handgun, and secondly, whether the State had the burden of proving that petitioner did not have a license to carry a handgun. This appeal is mainly concerned with the propriety of the trial judge's response to the second point. It is imperative to note at the outset that petitioner, during the trial, never claimed to possess a permit for the carrying of a handgun. In fact, he presented no defense other than requiring the State to prove its case. Thus, absolutely no issue was raised during trial concerning the existence of a license for the handgun allegedly seen in petitioner's possession and no evidence was introduced pertaining to petitioner having, or not having, such a license.

The following dialogue took place between petitioner's attorney ("Ms. Meckler"), the prosecutor ("Mr. Cox") and the trial judge relating to how the trial court should respond to the jury's questions:

THE COURT: The jury's question—I'm going to read them exactly the way they're written on here. I don't see anything else. It doesn't say any beginning or ending. It doesn't say Judge or, you know—I'm going to read you only what's on the sheet. "Is having a gun a crime?" That's the first one. Next one, "Does the State have the burden to prove that he did not have a license (to carry the gun)?" All right. The first one; what's your response on that, Mr. Cox?

MR. COX [PROSECUTOR]: I would say, yes, under the—under the way the jury instruction was formulated. I might say—suggest that you should read them the jury instruction again. But to the second part, I would, certainly, say no.

THE COURT: I think—you know, what I think—I think they're digging a little deeper there, but it isn't a crime to own a gun; it's only a crime to wear, carry, and transport a gun without a license.

MR. COX: Right.

THE COURT: I think that's what I would have to tell the jury, that under some circumstances, it may be a crime to own a gun. But I would say this, my inclination is to say, if you have not been convicted previously of a felony or a crime of violence or of having had a gun illegally, that it is not a crime to own a gun. However, it is a crime to wear, carry, and transport a gun, in accordance with my instructions. That is my inclination on question one. What's your response to that?

MS. MECKLER [DEFENSE COUNSEL]: Your Honor, I think if you give them that, they're going to come back with, "Well, does he have any prior convictions?" I think it's just going to open a can of worms.

THE COURT: All right. So you don't want me to say that. Just say that, in our society, it is permissible to own a gun, but it is not permissible to wear, carry, and transport a gun in Maryland without a license; how's that?

. . .

THE COURT: . . . That's what I'm going to do in the first one. Now, let's go to the second one. "Does the State have the burden to prove that he did not have his license?" What's your answer to that?

MR. COX: No, Your Honor . . . I don't believe so.

THE COURT: I don't think so either. What's your response to that Ms. Meckler? In fact, it's just the reverse. They've got—the Defendant—in Maryland law, the Defendant has to show that he has a license in order to justify having a gun.

MR. COX: Your Honor, I don't even believe that—in the first part, I don't even think there should be any reference

to a license; just the State doesn't have to prove that he did not have one.

MS. MECKLER: Your Honor, I would—

THE COURT: Well, I'm going to tell them that the State doesn't have to prove that. In fact, it's just the reverse; the Defendant has to prove it.

MR. COX: Okay.

. . .

MS. MECKLER: Regarding question four, "Is having a gun a crime," I'm going to ask just the Maryland pattern jury instruction for wear, carry, and transport be read . . . *as to does the State have the burden to prove he did not have a license. That's not before the jury. The jury is not being asked to consider that.*

THE COURT: Well, that definitely is before the jury. The jury is coming up with far-reaching philosophical approaches to the question of guns.

MS. MECKLER: So I would just say—I would just ask that, you know, the jury just be instructed that's not something that—it's not before the jury for you to determine that.

THE COURT: Okay. Well, I disagree with you. I'm going to answer that the way I told you. I don't think the jury should be not told anything . . . and not have their questions answered. I believe that when a jury reaches out intelligently into a question, that they have a right to an answer, and I've always felt that way. I've always disagreed with this policy of trying to isolate juries from the realities of life.

In fact, in the State of Maryland, it is absolutely permissible to own a gun, as you know, in your house or in other places where the law permits it. . . . However, it is not legal in Maryland to carry, wear, or transport a gun without a license. . . . A license means you can carry a gun under restricted circumstances, which the license says. And it's the burden of the Defense to produce a license, if, in fact, there is one.

MS. MECKLER: Your Honor, are you going to—you're not going to tell the jury that though, are you?

THE COURT: Yes, I am.

MS. MECKLER: Okay. *I'm going to object.* I don't think that the jury—the Court instructed the jury that the State had the burden of proof. *By saying or talking about this license is irrelevant, and by now bringing up burden of proof, you're now shifting the burden to the Defense. We never raised the issue of a license,* and I think by—as soon as you say the word "burden of proof," you're going to automatically shift the burden to the Defense, and there's no reason to do so.

THE COURT: Well, I think there is [a] burden on the Defense to produce a license, if there is one.

MS. MECKLER: *Had we brought that up, had we opened the door, had we brought that up as a defense, I would agree. We did not.* The jury is overreaching. And now what the Court's going to be doing is now saying, well, now the State no longer has the burden; the burden is now on the Defense to create a defense that we never came up with. This is something the jury has come up with on their own, and I don't feel that we should now be put in a position— just because they have a question, that we should now be told that . . . the burden's on us, because then they're going to feel that, well, I should have put on evidence regarding the license. I have no burden to put on any type of defense.

THE COURT: Okay. We'll let the appellate courts deal with it . . . I disagree with you. Let them decide it. Bring [the jury] in." [Alterations added.] [Emphasis added.]

When the jurors were brought back into the courtroom following this conversation between the trial court judge and the opposing attorneys, the trial judge instructed them as follows with respect to the jury's second question regarding the effect a gun license has on the burden of proof:

"THE COURT: . . . All right. Now the second part of that question says, 'Does the State have the burden to prove that [the defendant] did not have a license in Maryland?' A

license, by the way, which is different from registration. A license means whatever it says. A license to wear and carry a handgun is permissible, if you have a license; and you may wear, or carry, or transport a handgun, if you have a license, in accordance with the terms on the license.

"Each license may have different terms. It might say you can carry it when you go to the bank, or it might say you can carry it at night. It might have different things, but that's what the license says. *It's the burden of the Defendant to prove the existence of the license, if one exists, not the State.* Does the jury understand my instructions? All right. You may now go back to the jury room and continue your deliberations." [Alteration added.] [Emphasis added.]

After receiving these supplemental jury instructions, the jury arrived at its verdict very soon thereafter[3] and petitioner was convicted of first degree burglary and of wearing, carrying, or transporting a handgun.

### Discussion

█ Petitioner contends that the trial court erred when it gave supplemental instructions to the jury which considered the existence of a handgun license where the issue of whether petitioner had such a license was never set forth by petitioner as a defense.

In *Chambers v. State,* 337 Md. 44, 48, 650 A.2d 727, 729 (1994), this Court stated that "[t]he main purpose of a jury instruction is to aid the jury in clearly understanding the case, to provide guidance for the jury's deliberations, and to help the jury arrive at a correct verdict." Maryland Rule 4–325 addresses jury instructions in criminal cases and states, in pertinent part:

"(a) **When given.** The court shall give instructions to the jury at the conclusion of all the evidence and before closing

---

**3.** According to notations made by the court reporter that are a part of the record before us, the jury retired to resume its deliberations at 3:35 p.m. and the sentencing on the convictions had concluded by 4:08 p.m.

arguments and may supplement them at a later time *when appropriate.* In its discretion the court may also give opening and interim instructions.

. . .

(c) **How given.** The court may, and at the request of any party shall, instruct the jury as to the *applicable* law and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given.

(d) **Reference to evidence.** In instructing the jury, the court may refer to or summarize the evidence in order to present clearly the issues to be decided. In that event, the court shall instruct the jury that it is the sole judge of the facts, the weight of the evidence, and the credibility of the witnesses.

(e) **Objection.** No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object.

(f) **Argument.** Nothing in this Rule precludes any party from arguing that the law applicable to the case is different from the law described in the instructions of the court stated not to be binding." [Emphasis added.]

As Md. Rule 4–325(a) states, jury instructions may be "supplemented" by the trial court "when appropriate." While this Court has stated that a question of "[w]hether to give a jury supplemental instructions in a criminal cause is within the discretion of the trial judge," *Lovell v. State,* 347 Md. 623, 657,

702 A.2d 261, 278 (1997), it is only within the ambit of the trial judge's discretion in the first instance if the supplemental instruction actually relates to an issue presented at trial. Petitioner claims that the supplemental instructions given by the trial judge to the jury during its deliberations were inappropriate because those instructions involved the issue of whether petitioner possessed a license to carry a handgun, an issue (and defense) *never presented at trial by petitioner* or by the State. As this Court stated in *Carter v. State,* 366 Md. 574, 583, 785 A.2d 348, 353 (2001), "[w]ith respect to the law to be applied in the case, when requested, it is the duty of the trial judge to instruct on the essential elements of the crime charged, any defenses *supported by the evidence,* and the burden of proof and presumption of innocence" (emphasis added). We have also stated that "a trial judge has a duty, upon request in a criminal case, to instruct the jury *on the applicable law.* ... This Court has interpreted Rule 4–325(c) as 'requir[ing] the trial court to give a requested instruction under the following circumstances: (1) the requested instruction is a correct statement of the law; (2) the requested instruction *is applicable under the facts of the case;* and (3) the content of the requested instruction was not fairly covered elsewhere in the jury instruction actually given.' " *Patterson v. State,* 356 Md. 677, 683–84, 741 A.2d 1119, 1122 (1999) (some emphasis added) (quoting *Ware v. State,* 348 Md. 19, 58, 702 A.2d 699, 718 (1997)); *see also Mack v. State,* 300 Md. 583, 592, 479 A.2d 1344, 1348 (1984) (stating that "a trial judge must give a requested instruction that correctly states the applicable law ...").

At petitioner's trial on the burglary and handgun charges, petitioner chose to rest without presenting any evidence in his defense. Therefore, *no issue was raised* during trial concerning the existence of a defense that petitioner had a license for the handgun allegedly seen in petitioner's possession. This necessarily indicated a strategic choice by petitioner not to attempt to set forth the affirmative defense that he possessed a license to carry a handgun. At the time of petitioner's alleged offenses, Md.Code (1957, 1996 Repl.Vol., 2001 Supp.),

Art. 27, § 36B provided the applicable law on the "wearing, carrying or transporting" of a handgun.[4] It stated, in pertinent part:

**"§ 36B. Wearing, carrying or transporting handgun; unlawful use in commission of crime.**

. . .

(b) *Unlawful wearing, carrying, or transporting of handguns; penalties.*—Any person who shall wear, carry, or transport any handgun, whether concealed or open, upon or about his person . . . shall be guilty of a misdemeanor; and it shall be a rebuttable presumption that the person is knowingly transporting the handgun. . . .

. . .

(c) *Exceptions.*—

. . .

(2) Nothing in this section shall prevent the wearing, carrying, or transporting of a handgun by any person to whom a permit to wear, carry or transport any such weapon has been issued under § 36E of this article."

Section 36B (c)(2) of Article 27 existed (and still exists presently as § 4–203(b)(2) of the Criminal Law Article) as an affirmative defense to the "wearing, carrying or transporting" of a handgun prohibition. It is a defense that, if set forth at trial, admits that the defendant *did in fact* have a handgun in his possession but that he should not be found guilty of violating any law because he had a license to have the handgun in his immediate possession at the time. *See* BLACK'S LAW DICTIONARY 451 (8th ed.2004) (defining "affirmative defense" as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true"). Because § 36B (c)(2)

---

4. Article 27, § 36B has been recodified without substantive change as Md.Code (2002, 2004 Supp.), § 4–203 of the Criminal Law Article.

existed as an exception to the statutory prohibition against the carrying of a handgun, it was not the responsibility of the State to prove that the exception did not apply, but it was exclusively within petitioner's discretion as to whether he would pursue such a defense. This principle was made clear by this Court in *Mackall v. State,* 283 Md. 100, 387 A.2d 762 (1978), in which we stated:

> "[W]hen a penal act contains an exception so incorporated with the substance of the clause defining the offense as to constitute a material part of the description of the acts, omission or other ingredients which constitute the offense, the burden is on the State to prove beyond a reasonable doubt, that the offense charged is not within the exception. In other words, when an exception is descriptive of the offense or so incorporated in the clause creating it as to make the exception a part of the offense, the State must negate the exception to prove its case. *But, when an exception is not descriptive of the offense or so incorporated in the clause creating it as to make the exception a part of the offense, the exception must be interposed by the accused as an affirmative defense.*"

*Mackall,* 283 Md. at 110–11, 387 A.2d at 767–68 (emphasis added).

It is clear from the record before us that petitioner never attempted to set forth such an affirmative defense in any pleading or at trial. Nor did the State present any evidence of a license or lack thereof. Issues of a license are entirely absent from the trial prior to the point of the jury's question.[5] Therefore, the trial judge's supplemental instruction to the jury stating that, "It's the burden of the Defendant to prove the existence of the license, if one exists, not the State," was inappropriately rendered. At that point, the burden was solely on the State to prove beyond a reasonable doubt that petitioner did indeed burglarize Hawkins' apartment and did

---

5. There is no issue presented in this case as to whether the State is required to even mention to the jury the existence of the possible exception or to negate it. Accordingly, we do not address it.

have a gun on his person during the commission of that crime. Because petitioner chose not to pursue a defense relating to him possessing a license for a handgun (or any defense), there was absolutely no reason for the trial judge, over objection, to instruct the jury as to the law of handgun licenses and its effect on the burden of proof (whatever that effect might be). *See Evans v. State*, 28 Md.App. 640, 667, 349 A.2d 300, 319 (1975), *aff'd*, 278 Md. 197, 362 A.2d 629 (1976) (observing that "Maryland has consistently held that [jury] instructions *need not and should not* be given on particular defenses unless and until there is evidence sufficient to generate a legitimate jury issue with respect to a particular defense") (alteration added) (emphasis added).

The supplemental jury instructions at issue here were simply not "appropriate" under Md. Rule 4–325 in that they did not state the "applicable law" as to the issues relating to the handgun charge then properly before the jury for deliberation. At the point the supplemental instruction was given, the entire burden of proving the commission of that particular crime rested with the State. Petitioner had presented no defense. The jury had already been correctly instructed. To then inform the jury that petitioner had the burden of establishing the existence of a license in order to prevail on a defense that petitioner had never raised, was to impose a burden on petitioner that he never had. Under these circumstances it could not have been harmless.

While it may be commonplace for a jury to pose questions during deliberations to a trial court for clarification and often these questions are reasonable, this does not mean that a trial court judge is obliged to provide answers via supplemental instructions to every question that a jury presents to the court, especially when those questions deal with aspects of the law that have absolutely nothing to do with the case *as presented to that jury* and create burdens of proof on a defendant, that the defendant, under the circumstances of the particular case, does not have. The jury should be limited in its deliberations to the issues and evidence as presented to it

and should not be given answers to inquiries which reach outside of the case as presented at trial.[6]

Our holding is bolstered further by the Court of Appeals of New York's opinion in *People of the State of New York v. DeGina,* 72 N.Y.2d 768, 537 N.Y.S.2d 8, 533 N.E.2d 1037 (1988). In *DeGina,* the defendant was on trial for the sale of illegal drugs to an undercover police officer. Because defense counsel had stated in his opening that the undercover agent had tried "to ensnare an innocent man," the trial court granted, over defense counsel's objection, the State's request that the jury be instructed on the defense of entrapment.[7] The

---

**6.** Our statements here seemingly are at odds with the Court of Special Appeals' discussion in *Perry v. State,* 150 Md.App. 403, 822 A.2d 434 (2002), in which that court stated:

> "[Md. Rule 4–325(c)]   states clearly that if a party timely requests an instruction, it is error not to give the instruction (or its equivalent) if it is generated by the evidence. It is error to do too little, but the rule does not make it error to do too much. It does not even address the subject of doing too much. With respect to the supplementary instruction now in issue, the dispositive answer is that the appellant did not request it. There was, therefore, no possible way that the appellant could be denied an instruction to which he was entitled. Rule 4–325(c) addresses no other problem.
>
>  . . .
>
> "Our conclusion as to excessive and frequently unnecessary jury instruction was 1) that the phenomenon is sad, 2) that it is unfortunate, and 3) that it nonetheless happens all the time. It has never been suggested that it is reversible error. A rule requiring a necessary instruction does not forbid an unnecessary instruction. It is under-inclusion that runs the risk of error. Over-inclusion only runs the risk of boredom."

*Id.* at 424–27, 822 A.2d at 447–48 (alteration added). We disagree with the intermediate appellate court's assessment of the breadth of Md. Rule 4–325(c). We believe that the intermediate appellate court paints with too broad a brush in its conception that a superfluous jury instruction can never amount to error. We recognize in the case *sub judice* that sometimes it can. This is especially so when the unnecessary instruction purports to place a burden of proof on a defendant to prove a defense that the defendant never raised.

**7.** As the Court of Appeals of New York recognized, because the defense of entrapment exists in that state as "an *affirmative* defense, the burden to establish these elements by a preponderance of the evidence is placed on the defendant—unlike other defenses, as to which the defendant has no burden and which the People must disprove beyond a reasonable

defendant was thereafter convicted of several counts of criminal sales of controlled substances. On appeal to the Court of Appeals of New York, the court was presented with two questions, very similar in substance to the ones now before this Court:

"[F]irst, was it error for the trial court to instruct the jury on the affirmative defense of entrapment over defendant's consistent protestations that he was not advancing an entrapment defense, but was in fact putting forth a different defense, and second—if error—was the error harmless?"

*DeGina,* 72 N.Y.2d at 771, 537 N.Y.S.2d 8, 533 N.E.2d at 1038.

In reversing defendant's convictions, the Court of Appeals of New York found that the defendant had never raised the defense of entrapment at trial but instead "[h]is defense was to deny engaging in the 'proscribed conduct' at all...." Id. at 775, 537 N.Y.S.2d 8, 533 N.E.2d at 1040. The court went on to hold:

"Having concluded from a fair reading of the record that defendant did not raise the entrapment defense, we further agree with the Appellate Division that it was error to accede to the People's request for such an instruction.

"Imposing the burden of proving entrapment on defendant, who had not raised it, constituted an abuse of the affirmative defense in derogation of defendant's right to have the State bear the entire burden of proof. Moreover, *a trial court is not authorized to instruct the jury on legal principles that are not applicable to the particular case* .... As we have recognized, jury instructions have singular significance in criminal trials, where a charge error may well result in the deprivation of a fair trial and require reversal.... Whether or not reversible error in every case, the erroneous instruction prejudiced defendant in at least two respects.

doubt." *DeGina,* 72 N.Y.2d at 775, 537 N.Y.S.2d 8, 533 N.E.2d at 1040.

"*First, a defendant unquestionably has the right to chart his own defense* ... and in this case the entrapment charge undermined the defense chosen by the defendant. In telling the jury that when counsel used the word 'ensnare' he was really raising the defense of entrapment, the court's instruction effectively impaired the success of the different inferences urged by defendant....

"*Second, the court imposed on defendant an affirmative burden of proof he had not undertaken by his defense theory.* The jury was charged that defendant had the burden of establishing by a preponderance of the evidence that [the undercover officer] actively enticed him into committing the crime, and that without such enticement defendant would not have been disposed to commit the crime. Understandably, in light of his quite different defense, defendant did not attempt to present evidence, through his own witnesses or through cross-examination, to demonstrate that [the undercover officer] actively encouraged or induced him to sell drugs ... as would have been required to prevail upon a claim of entrapment. Nor did defendant make any affirmative effort to meet his burden of showing a lack of disposition to commit the charged crimes, as it was his claim that they had never happened at all. *Thus, the court's charge imposed upon defendant an affirmative burden that the jury was bound to conclude he had failed to sustain....*"

*Id.* at 776–77, 537 N.Y.S.2d 8, 533 N.E.2d at 1041–42 (citations omitted) (some emphasis added). Finding that the jury instructions were indeed in error, the court then moved onto the second part of its analysis, *i.e.,* whether the error was harmless or not. In holding that the error was not harmless, the court stated:

"While it is true, as the People point out, that the trial court initially, and properly, charged the jury that they were not to reach the affirmative defense of entrapment unless and until they determined that the People had met their higher burden of proving the elements of the charged crimes, we do not therefore conclude that defendant could

not have been prejudiced by the imposition of a burden that he was unprepared to meet. In that defendant advanced only a defense—as to which he had no affirmative burden of proof ... —*the suggestion that he had assumed a burden of proof in connection with his defense itself had the potential to mislead the jury . . . .*"

*Id.* at 778, 537 N.Y.S.2d 8, 533 N.E.2d at 1042 (citation omitted) (emphasis added). In the case *sub judice,* petitioner, by entering a plea of not guilty and then resting at the close of the State's case-in-chief, raised only the defense that he had not committed the offenses at all, not that he had some affirmative defense.

The State attempts to distinguish *DeGina* from the case *sub judice* by stating that, unlike in *DeGina:*

"Here, the instruction on the permit exception to the handgun violation was requested not by the prosecutor, but by the jury itself. There is no suggestion in the present case that the prosecutor was attempting to gain an advantage by confusing the jury or introducing a defense that it knew [petitioner] could not provide. Under Maryland law ... the trial court has a duty to clarify the law where the jury indicates that it needs clarification." [Alteration added.]

What the State fails to realize is that while the trial court may sometimes have a duty to clarify the law where the jury indicates it needs clarification, such clarification is only appropriate if it concerns *the law applicable to the case as already presented to the jury. See* Md. Rule 4–325(c). One supposes that a jury could question myriad aspects of the law during its deliberations, but there has never existed a duty for the trial court to reply to jury questions which have nothing to do with the case as it was presented.

Because we hold that the trial court erred in its response to the jury's inquiry as to the effect of a license on the handgun charge, we too must necessarily examine whether the trial court's action should or should not be considered harmless error. For reasons similar to those espoused by the Court of Appeals of New York in *DeGina,* we hold that the

trial court's error regarding the supplemental jury instructions was not a harmless error but likely unfairly prejudicial to petitioner.

As stated, petitioner did not put on any evidence at trial in his defense—he merely relied on a presumption of innocence, which he unquestionably is entitled to do. *See Coffin v. United States*, 156 U.S. 432, 453, 15 S.Ct. 394, 403, 39 L.Ed. 481 (1895) (stating that "[t]he principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law"); *see also Williams v. State*, 322 Md. 35, 42, 585 A.2d 209, 212 (1991) (stating that "[w]hen we have referred to the presumption of innocence, we have followed with a warning to the effect that 'in order to warrant a finding of guilt, it is incumbent upon the State affirmatively to establish the defendant's guilt beyond a reasonable doubt' ") (quoting *Malcolm v. State*, 232 Md. 222, 225, 192 A.2d 281, 283 (1963)).

At the point when the case was handed over to the jury for deliberations as to defendant's innocence or guilt of the handgun charge, the jury was required to consider solely whether the prosecution had proved beyond a reasonable doubt that petitioner was carrying a handgun on his person as he fled from the apartment building. Notwithstanding the curiosity of the jury, made evident by its question to the trial court judge about whether the State had a burden to prove that petitioner did not have a license for the handgun, it constituted error for the trial court judge to then remark in his supplemental instructions to the jury that petitioner, and not the State, carried the burden of proving that he had a handgun license if one existed when petitioner *had never countered the charges against him with such a defense.* The instructions, however correct, imposed a burden petitioner, under the circumstances of the case, did not have.

In *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665, 678 (1976), we stated "[w]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own

independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated." We do not find that the error at issue in this case was harmless.

As we recently stated in the case of *Fleming v. State,* 373 Md. 426, 432–33, 818 A.2d 1117, 1121 (2003):

> "*The defendant is entitled to have the jury instructed on any theory of the defense that is fairly supported by the evidence.* Whether a particular instruction must be given depends upon whether there is any evidence in the case that supports the instruction; if the requested instruction has not been generated by the evidence, the trial court is not required to give it. Whether the evidence is sufficient to generate the required instruction in the first instance is a question of law for the judge. *In evaluating whether competent evidence exists to generate the requested instruction, we view the evidence in the light most favorable to the accused.*"

> "On appeal, instructions are reviewed in their entirety to determine if reversal is required. The jury instructions must be read together, and if, taken as a whole, they correctly state the law, *are not misleading,* and cover adequately *the issues raised by the evidence,* the defendant has not been prejudiced and reversal is inappropriate. Reversal is not required where the jury instructions, taken as a whole, sufficiently protect the defendant's rights and adequately covered the theory of the defense."

*Fleming,* 373 Md. at 432–33, 818 A.2d at 1121 (citations omitted) (emphasis added).

In the case *sub judice,* by instructing the jury as to which party bore the burden of establishing whether petitioner possessed a handgun license/permit, the trial judge improperly instructed the jury and injected into the jury deliberations a defense theory that *was never raised at trial by the petitioner* and misleading as to which party bore the ultimate burden of proof as to the handgun charge. The trial judge's supplemen-

tal instructions insinuated to the jury that a possible defense theory to the handgun violation existed that was not pursued by petitioner. After the trial judge announced to the parties how he was going to respond to the jury's questions, defense counsel for petitioner understandably stated her concerns with the supplemental instructions when she stated that:

"Had we brought that up, had we opened the door, had we brought that up as a defense, I would agree. We did not. The jury is overreaching. And now what the Court's going to be doing is now saying, well, now the State no longer has the burden; *the burden is now on the Defense to create a defense that we never came up with.*" [Emphasis added.]

Because no evidence had ever been entered into evidence regarding whether petitioner possessed a license to carry a handgun, any instruction to the jury relating to the burden of proving the existence of such license was improper and constituted error. At that point in the trial, where that defense had never been raised, it simply was not within the province of the trial court to instruct the jury in the particular area of the law from which the jury question arose, thereby allowing the jury to lose focus from the proper issues involved. This was not harmless error. The jury should have instead been instructed to confine its deliberations to the issues and evidence properly before it and the instructions already given and not to speculate on matters as to which no evidence had been introduced. This is especially so when the supplemental instruction given imposes a duty on a defendant to prove the existence of an affirmative defense never raised. We hold that the trial court committed reversible error in relation to the handgun charge.[8]

---

8. Our holding does not affect the validity of the jury finding petitioner guilty beyond a reasonable doubt of the crime of burglary. The supplemental jury instructions at issue in the case at bar did not address any of the elements of the separate burglary charge or the applicable burden of proof as to that charge. The record clearly indicates that, before jury deliberations began, the trial judge properly instructed the jury as to the necessary elements of the crime of burglary, as well as the State's burden to prove each and every one of those elements beyond a

With our reversal of the handgun conviction the third question relating to a consecutive sentence on the handgun charge becomes moot.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AS TO THE HANDGUN CHARGE REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AS TO THE HANDGUN CHARGE; OTHER CONVICTIONS AFFIRMED. COSTS TO BE PAID BY RESPONDENT.**

Concurring Opinion by WILNER, J.

I agree that the trial court gave an erroneous instruction in response to the jury's questions and that the error was not harmless. I think, however, that, in this instance, it was not inappropriate for the trial court to take cognizance of the questions raised by the jury and to make *some* response to them, for, if it declined to do so, one or more jurors may have reached a verdict on wholly inappropriate and speculative grounds. I think that the appropriate response, in light of the questions, should have been that (1) wearing, carrying, or transporting a handgun without a permit is unlawful; (2) the defendant has not claimed that he had a permit; and (3) because the defendant has not claimed that he had a permit, it is not an issue in the case and the State was therefore not required to offer evidence that he did not have one. That would have answered the jury's question in a proper and neutral manner without getting into burdens of proof, misstating the law, or prejudicing either the defendant or the State. It would have returned the jury's focus to where it should have been on that count—whether the defendant, in fact, was carrying a handgun, not whether he was entitled to carry such a weapon.

---

reasonable doubt. The supplemental jury instructions at issue in the case at bar only addressed the separate charge of a handgun violation.

RAKER, J., dissenting, with whom HARRELL, J., joins:

I would affirm the judgment of the Circuit Court for Baltimore City on the grounds of harmless error. Although the court formulated an incorrect response to the jury note as to whether the State has the burden of proving that the defendant did not have a gun license in Maryland, the error was harmless beyond a reasonable doubt.

I.

The jury obviously had determined that the defendant was in actual possession of the handgun and was thus wearing, carrying or transporting the gun. Since he raised no defense that he was licensed or permitted to carry, wear or transport this gun, he in fact received *more* than he was entitled to receive. *See Parker v. State,* 7 Md.App. 167, 181–82, 254 A.2d 381, 389 (1969) (finding that in considering the propriety of an instruction, "even if it be so construed, there was no error in the instruction requiring reversal, as the defendant received more than that to which he was entitled"). It made no difference as to who had the burden on this issue, because there was absolutely no evidence to suggest that he lawfully could carry or transport this handgun. When a defendant has a defense before the jury, even though he did not raise it, and it is one that could exonerate him, he can hardly complain about the instruction. "[A] defendant who has received more than he is entitled to is in no position to complain." *United States v. Seavey,* 180 F.2d 837, 840 (3d Cir.1950); *United States v. Nutter,* 22 M.J. 727, 729 (A.C.M.R.1986). *See also People v. Osband,* 13 Cal.4th 622, 55 Cal.Rptr.2d 26, 919 P.2d 640, 681 (1996) (holding error was harmless beyond a reasonable doubt because defendant received more than he was entitled to when the jury was instructed on the "specific intent" to commit the underlying felony of rape). There was no reasonable possibility that the jury could have misunderstood the burden of proof as to the other counts. Accordingly, the error was harmless beyond a reasonable doubt.

The Supreme Judicial Court of Massachusetts addressed a similar issue in *Commonwealth v. Curtis,* 417 Mass. 619, 632 N.E.2d 821 (1994). The defendant complained on appeal of an erroneous instruction as to self-defense. The court pointed out that "[t]he defendants' arguments fail because neither was entitled to any instruction on self-defense. Thus, whatever the judge said about self-defense, and the use of excessive force in self-defense, was more favorable to the defendants than they deserved and could not have prejudiced their positions." *Id.* at 830. *See also Commonwealth v. Doucette,* 430 Mass. 461, 720 N.E.2d 806, 812 (1999) (concluding that "The judge's instructions permitting the jury to consider self-defense by the use of deadly force on the armed home invasion charge granted the defendant a benefit to which he was not entitled"); *Commonwealth v. Torres,* 420 Mass. 479, 651 N.E.2d 360, 368 (1995) (noting that "the defendant was not entitled to any instruction on self-defense or defense of another. Therefore, whatever the judge said ... was more favorable to the defendant than he deserved and could not have prejudiced his position"); *Commonwealth v. Toon,* 55 Mass. App.Ct. 642, 773 N.E.2d 993, 998 (2002) (noting that "Whether an allegedly erroneous instruction on self-defense (and excessive force in self-defense) is prejudicial (or creates a substantial risk of a miscarriage of justice) necessarily involves examining first whether self defense was raised sufficiently. If not, the defendant received more than he was entitled to").

## II.

As to the propriety of the supplemental jury instruction, I agree with the views expressed in the concurring opinion of Judge Wilner. The court's response to the jury inquiry should have been that wearing, carrying or transporting a handgun without a permit is unlawful, that the defendant has not claimed that he had a permit, that it is not an issue in the case, and that the defendant is not required to produce or offer any evidence whether he had one or not.[1]

---

1. The substance of an instruction as to who has the burden of persuasion on the issuance of a permit to carry or transport a firearm is best

Ordinarily, it is within the discretion of the trial court as to how, and when, to respond to a note from the jury. It has been held, however, that it is reversible error "where a jury shows confusion about a central aspect of applicable law, and the general instruction did not provide the legal information needed, [and] ... the court does not respond to the jury's note." *Potter v. United States,* 534 A.2d 943, 946 (D.C.1987). *See also United States v. Bolden,* 514 F.2d 1301, 1308 (D.C.Cir.1975) (citing *Wright v. United States,* 250 F.2d 4, 11 (D.C.Cir.1957) (en banc) for the proposition that "when a jury shows confusion, a trial judge is under an obligation to respond and is not, in responding, bound by the standard instruction"); *Wright,* 250 F.2d at 11 (holding that the trial judge's refusal to answer a juror's question constituted reversible error, because "it is the duty of the judge to fill in the sketch, as may be appropriate on the basis of the evidence, to provide the jury with light and guidance in the performance of its difficult task"). The majority's assertion that the discretion to give supplemental instructions "is only within the ambit of the trial judge's discretion in the first instance if the supplemental instruction actually related to an issue presented at trial," maj. op. at 641, is unsupported by any authority, is wrong, and is simply a bald assertion.

Judge Harrell has authorized me to state that he joins in this dissenting opinion.

---

left to another day. That issue should be decided in a case in which it is raised properly, and then fully briefed and argued.