29 A.3d 656

**Juan Maximo PEREZ**

v.

**STATE of Maryland.**

**No. 2000, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Sept. 29, 2011.

---

Piedad Gomez (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Jeremy M. McCoy (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: WRIGHT, MATRICCIANI, FREDERICK J. SHARER, (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

Juan Maximo Perez, appellant, was convicted by a jury sitting in the Circuit Court for Montgomery County of child sexual abuse and fourth degree sexual offense against his fourteen-year-old step-daughter, Giselle D. He was sentenced to ten years of imprisonment, with five years suspended in favor of five years of supervised probation, for the child sexual abuse conviction. His remaining conviction merged at sentencing.

Appellant noted a timely appeal and presents one question for our review: "Did the trial court err in its response to a jury question?" We answer in the negative and therefore shall affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

At trial, Giselle D. testified to the following. On December 29, 2008, her mother, Frances Pena, forced her to take a home drug test after finding marijuana in her bedroom. The test result was positive. Giselle's mother threatened to give the test to police as a punishment, but never did so.

Later that evening, appellant entered the bathroom while Giselle was inside preparing for bed. He told her, "I'll throw away this drug test if you let me prove that you're a virgin." Appellant explained that he would test her virginity by "put[ting] his finger inside of [her]." He then threatened, "I don't think you are, so I'm going to tell your mom that you're not if you don't let me do this."

Giselle was uncomfortable and confused about what to do. However, she decided to let appellant test her virginity for fear of getting into trouble with her mother or police. She explained at trial, "I didn't want it. I didn't want him to do it and then I felt really bad about it but I just didn't want to get in any more trouble than I already was." Appellant proceeded to digitally penetrate Giselle's vagina. Giselle became

more uncomfortable and said to appellant, "Stop ... please don't do that anymore. I'm really uncomfortable, you know, you don't, you shouldn't have to do this." He responded, "No, come on. It's all right, you know, I need to test this then you'll be out of trouble or something[.]" Giselle again told appellant to stop, but he kept trying to convince her to let him continue the "test." Finally, Giselle pulled away and exited the bathroom.

Even later that evening, appellant sat beside Giselle while she was sitting on the sofa watching television and began asking if she and her friends would engage in sexual acts with him in exchange for money. She told him no. The next day, appellant attempted to continue the conversation with her. He also offered to allow her to drink beer with him in his bedroom. She declined his invitation.

Later that day, appellant again broached the subject. This time, however, he also placed his hand inside of Giselle's pajamas and touched the outside of her vagina. After Giselle recoiled to the other end of the couch, appellant left, telling her, "Well I'll give you some time to think about it, and I'll come back later." Giselle ran to Teresa Rivas's house, who was a friend of her mother. Giselle told Rivas what appellant had done and called her mother. At her mother's suggestion, Giselle called the police. The police set up a recorded telephone call between Giselle and appellant in an attempt to get him to admit to the sexual contact. Giselle's mother was home by that time, however, and appellant made no admissions.

Pena testified that after she spoke with Giselle, appellant called her and said, "Giselle is going to accuse me of something." Pena asked what and he said, "[L]ast night I, I told her that if she let me throw the urine away, I will, going to throw the urine away if she let me see if she was a virgin. And I put a finger on her vagina." He explained that he just wanted to convince her that Giselle was sexually active. She told him that she told Giselle to contact the police.

Detective Sally Magee and Detective Levi Renno of the Montgomery County Police Department testified that during

an interview with appellant, he admitted to digitally penetrating Giselle, explaining that he was certified in gynecology in his native country of Cuba to determine virginity and gestational months from digital penetration. However, appellant could not remember the name of the medical school where he studied. Appellant advised that he was concerned that Giselle was sexually active because of her young age. He also stated that it was Giselle who placed his hand down her pants so that he could perform the "test" and prove that she was not a virgin. After penetrating her, appellant confirmed that Giselle was not a virgin. Appellant denied touching her the next day, however, and insisted that it was Giselle who offered to have sexual intercourse with him. Appellant admitted that he knew it was wrong to digitally penetrate Giselle.

In addition to Giselle D., Frances Pena, Officer Kevin McGlamary, Detective Sally Magee, and Officer Levi Renno also testified during the State's case-in-chief. Appellant did not testify or present any witnesses in his defense.

At the close of the evidence, the court instructed the jury on the crime of fourth degree sexual offense as follows: "In order to convict [appellant] of fourth-degree sexual offense, the State must prove first that [appellant] had sexual contact with Giselle [ ]; and, secondly, that the sexual . . . contact was made against the will and without the consent of Giselle [ ]."

The court then instructed the jury on child sexual abuse as follows: "As to child sexual abuse, child abuse is sexual molestation or exploitation of a child under 18 caused by a parent or other person who has permanent or temporary care, custody or responsibility for the supervision of that child or by any household or family member."

The jury retired to deliberate, and during its deliberations submitted a note to the court stating:

We have a request for clarification on the offense titled

4th degree sexual offense:

When it states

'sexual contact was made against the will and without consent'

Where does exploitation or coercion fall? Is it against her will or not?"

After an extended colloquy among the court, defense counsel, and the prosecutor, the court provided the following written response to the jury question: "Consent means actually agreeing to the act, rather than merely submitting as a result of threats or coercion."

The jury ultimately found appellant guilty of fourth-degree sex offense and child sexual abuse for the events that occurred on December 29, 2008. The jury acquitted appellant on charges of fourth degree sexual offense based upon the events alleged to occur the following day, December 30, 2008. As previously noted, appellant was sentenced to ten years of imprisonment, with five years suspended in favor of five years of supervised probation, for the child sexual abuse conviction, which was merged with the fourth-degree sexual offense conviction for sentencing purposes. Appellant then timely noted the present appeal. Additional facts will be provided as necessary.

## DISCUSSION

Appellant contends that the circuit court erred in its response to the jury question. Specifically, he argues that "the court's response to the jury's question, which went beyond the statutorily defined offense, provided the jury a prejudicially erroneous definition of 'consent.'" Relying upon *State v. Rusk*, 289 Md. 230, 424 A.2d 720 (1981), he posits that, "The court's response failed to convey that for submission to constitute lack of consent, the complainant must be faced with a 'compelling force' or a fear so extreme that it renders the mind incapable of resisting." Accordingly, he concludes that Giselle's testimony was insufficient to prove lack of consent.

The State responds that the court acted within its discretion in giving the supplemental jury instruction. Specifically, it argues that appellant overstates the *Rusk* holding, which does

not require "a 'compelling force' or a fear so extreme that it renders the mind incapable of resisting," to prove lack of consent. It posits that the court properly looked to the *Maryland Criminal Pattern Jury Instructions* (MPJI–CR) and appropriately modified the definition of consent set forth in the second degree rape instruction. It concludes that Giselle's testimony was sufficient to prove her lack of consent.[1]

Maryland Rule 4–325 governs jury instructions. It provides in pertinent part:

> (a) **When given.** The court shall give instructions to the jury at the conclusion of all the evidence and before closing arguments and may supplement them at a later time when appropriate. In its discretion the court may also give opening and interim instructions.
>
> \* \* \*
>
> (c) **How given.** The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given.

An "instruction" includes any "communication from the judge to the jury made after the close of the evidence." *Lansdowne v. State*, 287 Md. 232, 243, 412 A.2d 88 (1980). In *Brogden v. State*, 384 Md. 631, 866 A.2d 129 (2005), the Court of Appeals observed that "a question of '[w]hether to give a jury supplemental instructions in a criminal cause is within the discretion of the trial judge.'" *Id.* at 640, 866 A.2d 129 (quoting *Lovell v. State*, 347 Md. 623, 657, 702 A.2d 261 (1997)). It elaborated upon a trial judge's obligations with respect to jury instructions regarding issues of law as follows:

---

1. The State also argues that appellant waived his argument by his failure to advance it before the trial court. *See* Md. Rule 8–131(a). We disagree, and conclude that the argument is sufficiently preserved for our review.

As this Court stated in *Carter v. State,* 366 Md. 574, 583, 785 A.2d 348, 353 (2001), "[w]ith respect to the law to be applied in the case, when requested, it is the duty of the trial judge to instruct on the essential elements of the crime charged, any defenses *supported by the evidence,* and the burden of proof and presumption of innocence" (emphasis added). We have also stated that "a trial judge has a duty, upon request in a criminal case, to instruct the jury *on the applicable law....* This Court has interpreted Rule 4–325(c) as 're-quir[ing] the trial court to give a requested instruction under the following circumstances: (1) the requested instruction is a correct statement of the law; (2) the requested instruction *is applicable under the facts of the case;* and (3) the content of the requested instruction was not fairly covered elsewhere in the jury instruction actually given.'" *Patterson v. State,* 356 Md. 677, 683–84, 741 A.2d 1119, 1122 (1999) (some emphasis added).

*Id.* at 641, 866 A.2d 129 (finding error in trial court's decision to give supplemental jury instruction regarding the law that was not generated by the evidence) (some internal citations omitted).

We are guided in this case by the Court of Appeals' decision in *State v. Baby,* 404 Md. 220, 946 A.2d 463 (2008). There, the Court addressed a trial court's failure to provide a supplemental jury instruction in response to a question of law posed by the jury. *Id.* at 222–23, 946 A.2d 463. The jury's question sought clarification of the effect of a victim's post-penetration withdrawal of consent during a rape. *Id.* at 222, 946 A.2d 463. In holding that the trial court erred by failing to give a supplemental instruction designed to clarify the jury's confusion, the Court observed that, "a trial court *must respond* to a question from a deliberating jury in a way that clarifies the confusion evidenced by the query when the question involves an issue central to the case." *Id.* at 263, 946 A.2d 463 (citing *Lovell,* 347 Md. at 623, 702 A.2d 261) (emphasis added).

The *Baby* Court disagreed with the State's argument that the jury question was unrelated to the defendant's convictions

for first and third degree sexual offense. *Id.* at 265, 946 A.2d 463. It observed that,

> Lack of consent is an element common to both rape and first and third degree sexual offenses[.] Any clarification which the jury received on the element of consent would have been applicable to its understanding of the first and third degree sexual offense counts, as well as the rape charges. A further instruction on the effect of post-penetration withdrawal of consent may have conceivably affected the jury's verdict on the charge of rape, so it may have altered the verdicts on the sexual offense charges.

*Id.* at 266, 946 A.2d 463 (footnote omitted).

■ Here, the jury sought clarification of the applicable law, *i.e.,* the definition of consent. The issue of Giselle's consent was central to the jury's decision in this case, and its definition was not fairly covered by any of the other jury instructions. Accordingly, the court was required to provide a supplemental instruction to resolve the jury's confusion. Hence, the next issue is whether the court's response was an accurate statement of the law.

■ As the *Baby* Court observed, consent is an element common to the sexual offenses and to rape. Accordingly, the circuit court fashioned its response to the jury question based upon the definition of consent set forth in MPJI–CR 4:29, the second-degree rape instruction, which provides:

> If (name) submitted to sexual intercourse, and if you find that her submission was induced by force or by threats that put her in reasonable fear of bodily harm to herself [or to another person], then her submission was without consent. Her fear was reasonable if you find that, under the circumstances, a reasonable woman would fear for her safety. Finally, consent means actually agreeing to the act of intercourse, rather than merely submitting as a result of force or threat of force.

■ The first two sentences of the instruction clearly concern only proof of the element of force required for a rape conviction. Fourth degree sexual offense does not require

proof of force, it requires only lack of consent. It was appropriate, therefore, for the court to omit the first two sentences pertaining to the element of force from the supplemental instruction, and to alter the remaining definition in accordance with the facts of the case. Indeed, as a general matter, use of the pattern jury instructions is favored. *See Merzbacher v. State,* 346 Md. 391, 404, 697 A.2d 432 (1997) (strongly recommending that trial judges follow the pattern reasonable doubt instruction); *Wills v. State,* 329 Md. 370, 383–84, 620 A.2d 295 (1993) (recognizing that the Committee which fashioned the pattern instructions included learned and experienced men and women from both the bench and bar); *see also Green v. State,* 119 Md.App. 547, 561–62, 705 A.2d 133 (1998) (the pattern instructions "serve as a useful and important roadmap for trial judges."); *Bayne v. State,* 98 Md.App. 149, 160, 632 A.2d 476 (1993) ("We note that generally the pattern jury instructions suffice and trial judges usually may rely on them."); *but cf. Arthur v. State,* 420 Md. 512, 24 A.3d 667 (2011) (holding that the trial court abused its discretion in refusing to grant a non-pattern jury instruction where the naked pattern instruction did not fairly cover the subject matter of the requested instruction); Maryland State Bar Ass'n, *Maryland Criminal Pattern Jury Instructions,* xvii (2007) ("[T]here is still the need to draft instructions, or modify instructions to accommodate the circumstances of a particular case.").

In addition, we agree that appellant's reliance on *Rusk* is misplaced. *Rusk* was a rape case involving overlapping evidence of threat of force and consent. *Rusk,* 289 Md. at 246–47, 424 A.2d 720. The *Rusk* Court observed that, "Consent may involve submission, but submission does not necessarily involve consent." *Id.* at 242, 424 A.2d 720. It then noted that, in rape cases involving only the threat of force, "lack of consent is generally established through proof of resistance or by proof that the victim failed to resist because of fear." *Id.* The court then posited that extreme fear, such as that of death or serious bodily harm, *could* establish lack of consent when unaccompanied by resistance. *Id.* at 242–43, 424 A.2d

720 (emphasis added). The Court by no means indicated that such fear was necessary to prove lack of consent even in rape cases. Given that force or threat of force is not an element of fourth degree sexual offense, such proof would be not only unnecessary but also unusual, especially for a misdemeanor offense. *See also Martin v. State*, 113 Md.App. 190, 241, 686 A.2d 1130 (1996) (observing that all degrees of sexual offense require lack of consent as an element, this Court noted, "That common denominator element is all by way of intimidation that a fourth-degree sexual offense requires. The fourth-degree offense is only a misdemeanor with a maximum penalty of one year's incarceration. It is only when additional elements of intimidation, beyond mere non-consent, are added to the definition that the severity of the sexual offenses escalates dramatically."). Thus, we conclude that the trial court's supplemental instruction was an accurate rendition of Maryland law.

█ We also conclude that Giselle's testimony was more than sufficient to permit the jury to find that she did not consent to the digital penetration. In a challenge to the sufficiency of the evidence, the standard of review is well settled. The Court of Appeals stated in *Harrison v. State*, 382 Md. 477, 487–88, 855 A.2d 1220 (2004) (quoting *Moye v. State*, 369 Md. 2, 12–13, 796 A.2d 821 (2002)):

> The standard of review for appellate review of evidentiary sufficiency is whether any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. We view the evidence in the light most favorable to the prosecution. We give due regard to the [fact finder's] finding of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses.

(citations and internal quotations omitted). Giselle testified that she did not want appellant to penetrate her digitally, and she agreed to the "test" only to avoid getting into further trouble with her mother or police, as threatened by appellant. She further testified that during the penetration she told

appellant repeatedly to stop, which he refused to do. The jury clearly chose to credit Giselle's testimony that she was threatened or coerced into submitting to the penetration, as it was entitled to do. *See Dawson v. State,* 329 Md. 275, 281, 619 A.2d 111 (1993) ("In reviewing the record to determine the sufficiency of evidence supporting a criminal conviction we are mindful of the respective roles of the court and the jury; it is the jury's task, not the court's, to measure the weight of evidence and to judge the credibility of witnesses.") (citing *McMillian v. State,* 325 Md. 272, 290, 600 A.2d 430 (1992); *Hammond v. State,* 322 Md. 451, 463, 588 A.2d 345 (1991)).

For those reasons, we shall affirm the judgments of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**