CLARK BROTHERS & COMPANY, INC., For the Use of United States Casualty Company and For the Use of Howard H. Henkelman,

*vs.*

THE UNITED RAILWAYS & ELECTRIC COMPANY.

*Negligence—Wagon Standing on Street—Requirements as to Lighting—Instruction After Jury Retired— Burden of Proof.*

In an action against a street railway company on account of injuries to a driver of plaintiff's wagon caused by an implement in defendant's trouble wagon which was standing in front of its trouble station, a question asked a witness, as to whether defendant was in the habit of leaving its wagons all night in front of the station *held* properly excluded, as not relevant to any issue in the case.                                    p. 164

The facts proved not admitting of a finding that the injury was due to a combination of negligence on defendant's part and an accident unconnected with negligence on plaintiff's part, and there being no circumstances to which the doctrine of last clear chance was applicable, *held* that it was proper to grant a prayer which imposed on plaintiff the burden of proving that the accident was caused solely by some act of negligence of the defendant.                                    p. 164

In an action against a street railway company on account of injuries to a driver of plaintiff's wagon, caused by his collision with an implement in defendant's trouble wagon which was standing in the street after dark, it was proper for the court, in answer to a written inquiry from the jury, sent to him after their retirement, to instruct them what were the requirements of the law as to the lighting of a vehicle at rest in the street, with the additional statements that if defendant violated the law in this regard and such violation caused the accident, this law might be considered by the jury, and that the length of time during which a vehicle, properly lighted, remained on the street, was not relevant to any issue in the case.      pp. 163, 165

*Decided November 18th, 1920.*

Appeal from the Superior Court of Baltimore City (SOPER, C. J.).

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*William N. McFaul,* with whom were *Charles F. Harley* and *Michael James Manley* on the brief, for the appellants.

*J. Pembroke Thom,* with whom was *Joseph C. France* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the court.

This is a suit by the employer for the use of the Casualty Company, which was required to make certain payments to an employee under the provisions of the Workmen's Compensation Act, and for the use of the employee to the extent of the excess of any verdict found by the jury over and above the total of such payments.

The employee, Henkelman, was injured while driving a one horse wagon in the car tracks on the right side going west on Lombard Street between Eutaw and Paca on the evening of October 28th, 1918. His wagon collided with a trouble wagon of the appellee standing in front of its trouble station on the north side of Lombard Street. He testified that he did not see the trouble wagon because it was dark and the wagon had no lights on it. He said "as I was opposite this wagon an object protruding out there struck me a blow and went right straight through my foot to the front of the wagon; it struck, I suppose, a foot and a half almost directly in front of the wagon and pinned my foot to this object like." His wagon was on the left of the trouble wagon and he was sitting a little to the right of the center of the seat of his wagon at the front. The protruding object pinned him to the front of his wagon. The object that struck him was a jumper track. "A jumper track is the covering they have to cover over a fire hose * * * this impact was so great

it struck my foot in the wagon, and the jar of the thing was so great it unbuckled the shaft on the right-hand side of my wagon; these shafts are fastened with a patent fastener; this impact going up against there, the jar was so great, and of course the impact unfastened the snap and the shaft on that side dropped down and veered the wagon in, and the shaft— not enough to break it, it just come unbuckled." "That is what caused the shaft to become unbuckled was the impact of the thing up there; the shaft never broke, but it come unbuckled by this great jar." The projection was from the rear of the trouble wagon towards the left. It was standing still. Witness does not think the trouble wagon was plumb up against the curb—he did not get out to look at it—witness was driving slowly and carefully.

On cross-examination witness was asked: "Q. How could this object you have been talking about before the court and jury catch you in the leg when you were seated if you were in the tracks of the company?   A. This truck or wagon or whatever it happened to be was sitting off at an angle, and that is one way it could have got in there; this had been swerved like and this hose jumper, the position of the thing was at an angle, and the hose jumper just smack got on my foot as I was going by; the position of the thing made it parallel with the front of my wagon.   Q. Can you explain why the horse's head did not run into it before it got up to you, if it was there?   A. That is hard to explain why it did not hit him, but this thing probably was in motion; when it came back it might have slipped, such a thing was possible; it might have moved after the horse got past it.   Q. Nobody was on the truck, was there?   A. No, sir; but those trucks are very heavy trucks and might have slipped; such a thing was possible.   Q. Did you see the truck move?   A. No, sir; I did not see it move, but that is the only solution of it.   Q. Was there sufficient room in going past that wagon in the position it was standing, the trouble wagon, to pass it?   A. No, sir."

There was no other witness to the accident offered by the plaintiff.

One witness who saw the occurrence testified for the defendant, viz.: Charles L. Radulovich, an employee of the Baltimore Dry Docks, who was at the time of the accident sergeant in camp utilities, Camp Meade. He saw the accident and explained it as follows: He was on Lombard street going west on the north side about fifteen or twenty feet from the trouble station. The wagon of Henkelman was going west on the westbound track of the United Railways Co. "I first noticed as I got, I said, about 20 feet from the station—that is the corner of Paca—there is a United Railways station there—and I noticed a wagon sort of wobbling, and I noticed also something was wrong with it." "The horse was going west on Lombard Street, and as he got near this thing the wagon veered from the track, the horse remained practically in the track, but the wagon hit this trouble wagon, and I ran over to see what the trouble was." "The truck that had the jumper or whatever was in it was facing west on the north side of Lombard Street, parallel with the car tracks." It was "right up against the curb." "Q. Was this truck with which this man collided at an angle on the street? A. Absolutely not; it was level with the curb. Q. This jumper you speak about, was it projecting over and out on the tracks of the railroad company or not? A. Absolutely it was not. The jumper is probably three feet from the tracks, pointing east. Q. Did the accident, as a matter of fact, occur while the horse and wagon was in the westbound track? A. No, it could not. He had to leave the tracks to have the accident occur. The coupling or something on the shaft gave way and that is what caused the wobbling, and it had to leave the tracks. It veered off to the north side."

Witness further testified he was on the north side of the street; on the wrong side of the track to see if there were any lights on it; there was no light on Henkelman's wagon. It was light enough on the street for witness to see what was

going on. He had no trouble in seeing the objects about him. The jumper projected from the back of the wagon about one foot. Other witnesses for defendant testified that the truck had lights on it.

Plaintiff offered only the usual measure of damages prayer, which was granted. Defendant offered four prayers, three of which were refused and the fourth granted. Defendant's granted prayer was as follows:

The court instructs the jury that unless they shall be satisfied by a preponderance of the evidence that the accident complained of was caused solely by some act of negligence of the defendant, the plaintiff is not entitled to recover, and the verdict must be for the defendant.

After the jury had been deliberating for about two hours, they sent from the jury room to the court the following inquiry:

"Hon. Judge:

"Kindly advise the jury if vehicles are permitted to stand on public thoroughfares after dark, if properly lighted, and if so, is there a time limit for them to remain there.

"(Signed)    A. B. Hargett,
                    "Foreman."

In answer to which the court, over the objection of the plaintiff, sent to the jury the following instruction:

"In answer to its inquiry, the jury is instructed that under the law applicable to this case a vehicle at rest on the streets of the City of Baltimore during the period from one-half hour after sunset to one-half hour before sunrise should display at least one white light, so placed as to be clearly visible both from the front and rear for a distance of at least two hundred feet, provided that a vehicle might display, at the option of the owner or user, one white light visible from the front and one red light visible from the rear for the distance aforesaid; and if the jury find that the defendant violated this law and that the violation of

the law caused the accident, then they may consider this law in making up their verdict. The jury is instructed that it was lawful for a vehicle lighted as above to stand on the public street after dark, and that the length of time during which the trouble wagon in this case stood upon the street does not enter into the decision of this case."

There are three bills of exception in the record, as follows:

First. On cross-examination a witness for the defendant was asked in regard to the trouble wagons on the street: "Q. How long were they standing there? A. That I could not say. They were there when I come to work, which was six o'clock. Q. Did they not stay there the night before? A. Not to my knowledge. Q. Refresh your recollection, and tell me whether they did not stand there the night before? A. I answered that question. Q. You don't know? A. I answered the question. Q. Were they there? Haven't you known them to stand there all night repeatedly?" The court sustained an objection to the last question, to which exception was reserved. We find no error in this ruling of the trial court. The question was entirely irrelevant to any issue in the case.

Second. Exception was reserved to the granting of defendant's fourth prayer because "it imposed upon the plaintiff the burden of proving that the accident complained of was caused solely by some act of negligence of the defendant." Under the evidence in the case the jury was bound to reach one of the following conclusions, viz: (1) That the accident was not attributable to any negligence on the part of the defendant. (2) That it was attributable to the combined negligence of the plaintiff and the defendant. (3) That it was due solely to the negligence of the defendant. There could be no finding on any arrangement or elimination of facts proved that the accident was due to a combination of negligence on the part of the defendant and an accident unconnected with negligence on the part of the plaintiff. If the

jury found No. 1, of course there could be no recovery. If it found No. 2, there could be no recovery, there being no circumstances here to which the doctrine of last clear chance could be applied; and the rule being well established that, in the absence of such modifying circumstances, where both parties are guilty of negligence directly contributory to an accident, neither can recover. This principle is too familiar to need the citation of authorities. It follows that defendant's granted prayer correctly stated the law applicable to the facts of the case.

Third. This exception was to the instruction given by the court in response to the jury's request. It was limited to the question propounded by the jury, stated the law correctly on this point, and in no way magnified the importance of that question or detracted from the importance of other questions involved in the case. It was clearly within the province of the trial court to instruct the jury as to the law, and we find no error in either the form or substance of the instruction objected to.

Finding no error in any of the rulings of the trial court, the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*