State of Maryland v. Jacob Bircher, No. 33, Sept. Term, 2015 Opinion by Battaglia, J.

**CRIMINAL LAW – TRIAL – ISSUE RELATING TO JURY TRIAL – INSTRUCTIONS AFTER SUBMISSION OF CAUSE**

The trial court did not abuse its discretion in giving a supplemental instruction on transferred intent after the jury asked, "We are confused on the term 'intent.' Does it mean to kill a person or the specific person. Can you please clarify? Thank you." The court's supplemental instruction was generated by the evidence and did not prejudice the defendant.

Circuit Court for Carroll County, Maryland
Case No. K-2012-42982
Argued: December 3, 2015

STATE OF MARYLAND

v.

JACOB BIRCHER

Barbera, C.J.
Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Jr., Glenn T.
(Retired, Specially
Assigned),

JJ.

Opinion by Battaglia, J.
Harrell, J., joins in judgment only.
Barbera, C.J., Adkins and Watts, JJ.,
dissent.

Filed: February 23, 2016

The State, after the Court of Special Appeals reversed the conviction of Jacob Bircher, Respondent, asks us to explore the realm of supplemental jury instructions in its Petition for Certiorari, which we granted, in which the following question was posed:

> Did the Court of Special Appeals err in finding an abuse of discretion in the trial court's decision to provide a supplemental instruction on the doctrine of transferred intent where the evidence was sufficient to invoke the doctrine, the instruction was prompted by a request for clarification from the jury, the instruction did not transform Bircher's defense into a concession, and the trial court ameliorated any potential prejudice by allowing defense counsel to supplement his closing argument?

*State v. Bircher*, 442 Md. 743, 114 A.3d 710 (2015). The trial judge in this case had given a supplemental jury instruction on transferred intent after the jury, during deliberations, asked, "We are confused on the term 'intent.' Does it mean to kill a person or the specific person. Can you please clarify? Thank you."[1]

We have stated that, "Trial judges walk a fine line when answering questions posed by jurors during the course of their deliberations. Any answer given must

---

[1] An eighteen count indictment returned in the Circuit Court for Carroll County on July 13, 2012, charged Bircher with first degree murder, second degree murder, manslaughter, two counts of use of a firearm in the commission of a crime of violence, two counts of carrying a handgun concealed on a person or openly with intent to injure, attempted first degree murder, attempted second degree murder, second degree assault, first degree assault, two counts of carrying a dangerous weapon with intent to injure, carrying a dangerous weapon concealed, three counts of reckless endangerment and transporting a handgun in a vehicle.

Bircher was convicted of first degree murder, two counts of use of a firearm in the commission of a crime of violence, two counts of carrying a handgun concealed on a person or openly with intent to injure, attempted first degree murder, second degree assault, first degree assault, two counts of reckless endangerment and transporting a handgun in a vehicle. Bircher's convictions for first degree murder as well as attempted first degree murder are the only charges before us. The conviction for first degree murder related to the death of David Garrett while the attempted first degree murder charge related to the shooting of Gary Hale.

accurately state the law and be responsive to jurors' questions without invading the province of the jury to decide the case." *Appraicio v. State*, 431 Md. 42, 44, 63 A.3d 599, 600 (2013). We have also acknowledged that:

> "The main purpose of a jury instruction is to aid the jury in clearly understanding the case, to provide guidance for the jury's deliberations, and to help the jury arrive at a correct verdict." Maryland Rule 4–325(a) states that "[t]he court shall give instructions to the jury at the conclusion of all the evidence and before closing arguments and may supplement them at a later time when appropriate." Upon a party's request, the court shall "instruct the jury as to the applicable law and the extent to which the instructions are binding." Supplemental instructions can include an instruction given in response to a jury question. When the jury asks such a question, "courts must respond with a clarifying instruction when presented with a question involving an issue central to the case." Trial courts must avoid giving answers that are "ambiguous, misleading, or confusing."

*Id.* at 51, 63 A.3d at 604 (internal citations omitted). "[W]hether to give supplemental instructions is within the sound discretion of the trial judge and will not be disturbed on appeal, absent a clear abuse of discretion." *Sidbury v. State*, 414 Md. 180, 186, 994 A.2d 948, 951 (2010).

Our jurisprudence references various considerations to guide a judge with respect to giving jury instructions. We have opined that the jury instruction initially must be a correct statement of the law and be applicable under the facts of the case. In *Brogden v. State*, 384 Md. 631, 866 A.2d 129 (2005), for example, Brogden was charged with carrying or transporting a handgun, among other crimes to which he presented no defense at the close of the State's case. The jury sent a note during its deliberations asking whether it was a crime to have a handgun and if the State had the burden of proving that the defendant did not have a license to carry the gun. Over Brogden's objection, the trial

2

judge gave a supplemental instruction, which in part stated that, "'It's the burden of the Defendant to prove the existence of the license, if one exists, not the State.'" *Id.* at 639, 866 A.2d at 133.

We reversed, reasoning that the supplemental instruction "did not state the 'applicable law' as to the issues relating to the handgun charge then properly before the jury for deliberation. At the point the supplemental instruction was given, the entire burden of proving the commission of that particular crime rested with the State." *Id.* at 644, 866 A.2d at 136. Thus, to instruct the jury that Brogden had the burden of proving the existence of a license, when he did not raise that affirmative defense, "was to impose a burden on petitioner that he never had." *Id.*; *see also Clark Bros. Co. v. United Rys. & Elec. Co. of Baltimore City*, 137 Md. 159, 165, 111 A. 829, 832 (1920) (An instruction given by the court in response to the jury's request "was limited to the question propounded by the jury, stated the law correctly on this point, and in no way magnified the importance of that question or detracted from the importance of other questions involved in the case. It was clearly within the province of the trial court to instruct the jury as to the law, and we find no error in either the form or substance of the instruction objected to."); *Higginbotham v. State*, 104 Md. App. 145, 157, 655 A.2d 1282, 1287 (1995), overruled on other grounds by *State v. Allen*, 387 Md. 389, 400, 875 A.2d 724, 730 (2005) (a supplemental instruction cannot be given where it is not supported by the evidence and "once the court chose to give supplemental instructions, it was required to state the law correctly").

A trial judge also must respond to a question from a deliberating jury in a way that clarifies its confusion, such that the judge's response is not ambiguous or misleading. For example, in *Battle v. State*, 287 Md. 675, 685, 414 A.2d 1266, 1271 (1980), Battle was charged with first degree rape and assault with intent to rape, among other violations. After a period of deliberation, the jury sent a question to the judge, which read, "When a possible consensual sexual relationship becomes non-consensual for some reason, during the course of the action—can the act then be considered rape?" *Id.* at 678, 414 A.2d at 1268. The judge replied, "I will answer your question by saying, 'Yes, that it is possible for a situation to start out as consensual and then become a non-consensual one in the course of the event.'" *Id.* We determined that, "the combination of the ambiguous question, ambiguously clarified by the trial judge, and the answer create sufficient confusion in this case to warrant reversal and a remand for a new trial." *Id.* at 685, 414 A.2d at 1271; *see also Midgett v. State*, 216 Md. 26, 41, 139 A.2d 209, 217 (1958), quoting *Wintrobe v. Hart*, 178 Md. 289, 296, 13 A.2d 365, 368 (1940) ("[I]nstructions which are ambiguous, misleading or confusing to jurors can never be classed as non-injurious.")

We reiterated this notion in *State v. Baby*, 404 Md. 220, 262, 946 A.2d 463, 488 (2008). Baby had been charged with first degree rape and the trial judge had originally instructed the jurors that, "Rape is unlawful vaginal intercourse with a female by force or threat of force and without her consent," and also supplied the jury with descriptions of "vaginal intercourse," "force," and "consent," which were taken from the pattern jury

4

instructions.[2] The deliberating jury asked questions involving whether first degree rape could occur if the victim had originally consented to intercourse but later changed her mind.

Faced with the trial court's refusal to give a supplemental instruction, we reversed Baby's conviction, stating that the trial judge failed to "address either of the jury's questions as the definition makes no reference to the issue of post-penetration withdrawal of consent which was central to the jury's questions." *Id.* at 263-64, 946 A.2d at 489. We concluded that, "a trial court must respond to a question from a deliberating jury in a way that clarifies the confusion evidenced by the query when the question involves an issue central to the case." *Id.* at 263, 946 A.2d at 488 citing *Lovell v. State*, 347 Md. 623, 657–60, 702 A.2d 261, 278-79 (1997) (holding that a trial court has a duty to instruct "in response to a jury's question concerning a matter that the jury is required to consider."); *see also Perez v. State*, 201 Md. App. 276, 284, 29 A.3d 656, 661 (2011) ("the court was

---

[2] The judge in *Baby* stated:
> Vaginal intercourse means the penetration of the penis into the vagina. The slightest penetration is sufficient. An emission of semen is not required. The amount of force necessary depends upon the circumstances. No particular amount of force is required, but it must be sufficient to overcome the resistance of the victim. You must be satisfied that the victim either resisted and that this resistance was overcome by force or threat of force or that the victim was prevented from resisting by force or threat of force. She must have resisted to the extent of her ability at the time unless her resistance or will to resist was overcome by force or fear that was reasonable under the circumstances. Finally, consent means actually agreeing to the act of intercourse rather than merely submitting as a result of force or threat of force.

*State v. Baby*, 404 Md. 220, 262-63, 946 A.2d 463, 488 (2008), quoting Maryland Criminal Pattern Jury Instruction, Section 4:29.

required to provide a supplemental instruction to resolve the jury's confusion" where "the issue . . . was central to the jury's decision in this case, and its definition was not fairly covered by any of the other jury instructions").

A trial judge, moreover, should avoid answering questions in a way that improperly comments on the evidence and invades the province of the jury to decide the case. *Appraicio*, 431 Md. at 53, 63 A.3d at 605. Appraicio was charged with assault and, during deliberations, the jury sent a note asking, "Can we consider the fact that there was no police report in evidence or no police testimony or to what extent can we consider the lack of above." *Id.* at 48, 63 A.3d at 603. The trial judge responded that the jury was to decide the case "based on what is in evidence" and "[i]n considering the evidence which is soley the province of the jury, consider it in light of your own commonsense and your experiences." *Id.* at 50, 63 A.3d at 603.

Before us, Appraicio argued that the trial judge should have instructed the jury "that a reasonable doubt can arise from the evidence or the lack thereof." *Id.* at 52, 63 A.3d at 605. We determined that the trial court "was right to be cautious concerning its response to the jury's question because too much commentary on the evidence can cross the line into being inappropriate." *Id.* at 53, 63 A.3d at 605. We reasoned that when the jury's question seeks guidance on how to find the facts, the judge's response must not "invade the province of the jury." *Id.*; *see also Gore v. State*, 309 Md. 203, 214, 522 A.2d 1338, 1343 (1987) ("The sufficiency in fact of the evidence was in the hands of the jury when the trial judge below instructed the jury that there was sufficient evidence as a matter of law to convict Gore. As such, we believe the instruction was an indirect

6

comment on the general weight of the evidence as to each count and outside the permissible scope of comment.").

We also have determined that a trial judge's supplemental instruction must not be prejudicial to the accused via "the juxtaposition of the supplemental instruction *vis a vis* defense closing arguments." *Cruz v. State*, 407 Md. 202, 212, 963 A.2d 1184, 1190 (2009). Cruz had been charged with second degree assault on Hayder Meza and Oscar Martinez, but there was conflicting testimony regarding whether Cruz had actually hit Mr. Meza or if Mr. Meza had been injured when he fell. The trial court, recognizing that second degree assault had various flavors, inquired of the State as to its theory to which the State responded was battery, whereupon the judge gave the following instruction:

> Now, in this case the defendant is charged with the crime of second degree assault on Heder Meza Herrera and, or Oscar Martinez. Assault is causing offensive physical contact to another person.
>    In order to convict the defendant of assault the State must prove: one, that the defendant caused offensive physical contact with, and, or physical harm to Heder Meza Herrera and, or Oscar Martinez. Two, that the contact was the result of an intentional or reckless act of the defendant and was not accidental. And, three, that the contact was not consented to by Heder Meza Herrera and/or Oscar Martinez.

*Id.* at 207, 963 A.2d at 1187. During his closing argument, Cruz's counsel conceded that Cruz "went after" Meza but argued Cruz did not strike him with the bat.

During deliberations, however, the jury asked, "[I]s Y falling on a sidewalk & hitting head while being chased by a bat by X, an assault by X on Y?", which precipitated a supplemental instruction, over Cruz's counsel's objection, that discussed the elements of attempted battery. *Id.* at 207-08, 963 A.2d at 1187-88. Cruz contended before us that the trial court erred in instructing the jury on a new theory of culpability after closing

7

arguments were completed. We agreed and reversed Cruz's conviction, concluding that, "The court's supplemental attempted battery instruction, though generated by the evidence, was not appropriate under Md. Rule 4–325 because it was given after closing arguments and thereby deprived Cruz of an adequate opportunity to defend against the new theory of culpability." *Id.* at 222, 963 A.2d at 1196. We reasoned that defense counsel "tailored her argument to address the battery theory of assault the State elected to pursue" and that, "In stating that Cruz 'went after' the victim, defense counsel essentially conceded the defendant's intent to make contact and walked into an attempted battery verdict." *Id.* at 221, 963 A.2d at 1195.

We stated that "*Baby* and *Brogden* address whether a supplemental instruction is appropriate in light of the evidence and issues presented at trial" and recognized that our prior decisions had not confronted the issue of "whether the juxtaposition of the supplemental instruction *vis a vis* defense closing arguments was prejudicial". *Id.* at 212, 963 A.2d at 1190. We relied upon cases from the federal circuits and our sister states to support our determination.

In *United States v. Gaskins*, 849 F.2d 454, 458 (9th Cir. 1988), one of the cases cited in *Cruz*, the United States Court of Appeals for the Ninth Circuit considered whether a district court's supplemental instruction to the jury on aiding and abetting was prejudicial. Gaskin was charged with possessing and manufacturing methamphetamine, but claimed that his brother-in-law was using his property to make methamphetamine and he had merely "kept his eyes closed when he shouldn't have". *Id.* at 456. Although the Government requested an instruction on aiding and abetting, the trial judge did not give

8

one. *Id.* During deliberations, however, the jury sent a note to the court asking "What level of involvement constitutes manufacturing?":

> Is it possible to have a clarification of the word "manufacturing"? Would we be correct [to assume] under the law that a person allowing or providing a physical space for a product to be produced, and/or being aware of what the product is and/or having agreed to accept a payment of any nature constitute being a party to the manufacturing? What level of involvement constitutes manufacturing?

*Id.* In response, the trial judge then instructed the jury on aiding and abetting. Gaskin objected to the instruction and requested leave to reopen closing argument to argue the facts regarding the aiding and abetting charge, but the judge denied his request. *Id.* at 456-57.

The United States Court of Appeals for the Ninth Circuit reversed and concluded that, "instructing the jury that it could convict Gaskin as an aider or abettor without allowing additional argument to address this theory require[d] reversal". *Id.* at 460. The court determined that, under Rule 30,[3] it was error to give the instruction after informing counsel that no such instruction would be given and that, "[f]ailure to comply with Rule 30 is reversible error, however, 'only if counsel's closing argument was prejudicially

---

[3] As *Gaskins* noted, Rule 30 of the Federal Rules of Criminal Procedure ("Rule 30") then provided, in pertinent part:
> "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed."

*United States v. Gaskins*, 849 F.2d 454, 458 (9th Cir. 1988), quoting Rule 30.

9

affected thereby.'" *Id.* at 458. The court stated that, "a district court's failure to comply with Rule 30 prejudices a party if the party was unfairly prevented from arguing his or her defense to the jury or was substantially misled in formulating and presenting arguments." *Id.* The court further opined that, "the district judge's decision to give the aiding and abetting instruction during jury deliberations, after initially stating at the Rule 30 hearing that he would not, unfairly prevented Gaskin's counsel from arguing against an aiding and abetting theory to the jury." *Id.* at 460. The court reasoned Gaskin suffered prejudice because his counsel was not given an opportunity to address whether Gaskin could have been convicted as an aider or abettor. *Id.*; *see also United States v. Hannah*, 97 F.3d 1267 (9th Cir. 1996) (defendant was not prejudiced by supplemental instruction on aiding and abetting in response to a question from the jury when the court properly permitted supplemental closing arguments on that theory).

In *United States v. Horton*, 921 F.2d 540, 541 (4th Cir. 1990), the district court judge had instructed the jury on aiding and abetting in response to an inquiry. Horton was indicted for murder along with two others, but Horton was the only one tried. *Id.* at 542. At trial, Horton objected to the submission of an aiding and abetting instruction, and the Government agreed to withdraw it. The trial judge, however, instructed regarding aiding and abetting after the jury asked, "If you were not the one to plan the murder, can you be convicted of first-degree murder?" and "If you are not the only one to premeditate the murder, can you be convicted of first-degree murder?" *Id.* at 543. Ultimately, after the trial judge gave a supplemental instruction to the jury, the judge permitted additional closing argument. *Id.*

10

On appeal, Horton argued that "the aiding and abetting instruction should not have been given because the Government's theory of the case had always been that Horton was the principal." *Id.* at 544. Horton viewed the Government's tactical decision to try the case in this manner as preventing it "from requesting an aiding and abetting instruction, even if there was sufficient evidence to support it." *Id.*, relying on *United States v. Williams*, 604 F.2d 277 (4th Cir. 1979).

The United States Court of Appeals for the Fourth Circuit, while acknowledging that the Government was not entitled to an aiding and abetting instruction, recognized that the judge was not precluded from giving the instruction as long as evidentiary support existed. *Id.* The court also reasoned that "where a new theory is presented to the jury in a supplemental instruction after closing argument, the court generally should give counsel time for additional argument. Adequate additional argument can cure any prejudice experienced as a result of supplemental instructions." *Id.* at 547 (internal citations omitted). The court stated that, "Though three minutes would have been utterly inadequate to develop an additional argument made necessary under a supplemental instruction, we are unable to discern either from defendant's actual supplemental argument or from his brief what new line of argument to the jury he really wished to pursue." *Id.* Thus, there was no prejudice where Horton's "arguments would have been the same, whether one or both theories had been charged." *Id.* at 548.

State cases also relied upon in *Cruz* included *People v. Millsap*, 724 N.E.2d 942 (Ill. 2000). In *Millsap* the Supreme Court of Illinois held that a supplemental instruction on liability for aiding and abetting was inappropriate when it had introduced an entirely

11

new theory of the case. Millsap was charged with robbery and home invasion. The State did not pursue an accomplice liability theory, nor did it request that the jury be instructed on accomplice liability. *Id.* at 945. The jury sent the judge a note during deliberations asking, "'[i]s the accomplice just as guilty [as] the offender who causes an injury in a home invasion?'" *Id.* Over objection, the trial court gave the instruction on accomplice liability without affording any reargument reasoning that the evidence supported it. *Id.* The jury found Millsap guilty of both robbery and home invasion. Millsap appealed, arguing the court erred giving a supplemental instruction on aiding and abetting. *Id.*

The Supreme Court of Illinois reversed, relying on *Gaskins*, and stated that, "Because the court in this case instructed the jury on accountability after the jury had begun its deliberations, defendant's attorney was entirely deprived of an opportunity to defend against that theory." *Id.* at 947; *see also State v. Ransom*, 785 P.2d 469, 470 (Wash. App. 1990) (instructing the jury on accomplice liability in response to a question from the jury was reversible error because "[a]ccomplice liability is a distinct theory of criminal culpability" and "[t]he effect was to add a theory that the State had not elected and that defense counsel had no chance to argue").

In *People v. Clark*, 556 N.W.2d 820 (Mich. 1996), another case relied upon in *Cruz*, Clark was charged with involuntary manslaughter after her child died from dehydration. Before closing arguments, the parties agreed to an instruction regarding gross negligence that required the jury to find that Clark failed to use ordinary care such that "'it must have been apparent that the result was likely to be serious injury'" in order to convict. *Id.* at 822. After the State closed, Clark's counsel asked the court to modify

12

the instruction by substituting "cause death" for "cause serious injury." *Id.* at 822. The trial court agreed and defense counsel proceeded to argue in closing that Clark "was a concerned parent doing her best in a difficult situation, and that it could not possibly have been apparent to her that her actions would result in [the child's] death." *Id.* at 823. Before instructing the jury, however, the trial judge indicated that he had changed his mind about the modification, because it would have imposed a higher burden on the State than the law required. When the judge offered Clark an opportunity to reopen closing argument, her counsel declined because reargument "would only accentuate issues that should not be accentuated and create credibility problems with the jury." *Id.*

The Supreme Court of Michigan vacated the conviction and ordered a new trial, because Clark's counsel "relied on and conformed his closing argument" to the requested instruction. *Id.* at 827. The court determined that prejudice occurs "when the change in the instructions is substantial, when the judge's instructions repudiate counsel's argument, or when the judge's instructions impair the effectiveness of the attorney's argument." *Id.* at 828, quoting *United States v. White*, 27 F.3d 1531, 1538 (11th Cir. 1994). The court reasoned that, "Defense counsel tailored his closing argument to be consistent with the theory that the defendant could not possibly have known that withholding water from the child would lead to his death" and concluded that, "Under the higher standard argued by defense counsel, the defendant might have been acquitted." *Id.* at 827. The court also determined that reargument would not have cured the prejudice because it "would have accentuated the issue and impaired defense counsel's credibility with the jury." *Id.*

13

The takeaways from *Cruz* and the cases upon which it relied are that a supplemental instruction should not be given if the accused "was unfairly prevented from arguing his or her defense to the jury or was substantially misled in formulating and presenting arguments." *Gaskins*, 849 F.2d at 458. Factors considered in determining prejudice include: "when the change in the instructions is substantial, when the judge's instructions repudiate counsel's argument, or when the judge's instructions impair the effectiveness of the attorney's argument." *Clark*, 556 N.W.2d at 828; *see also United States v. White*, 27 F.3d 1531, 1538 (11th Cir. 1994).

The issue of transferred intent in the instant case arose after testimony was adduced that Bircher shot Gary Hale and David Garrett; Mr. Hale was hit once in the arm and survived, while Mr. Garret was struck eight times, in the head behind his right ear, his right shoulder, the right side of his back, his right hip, his right lower leg and left lower leg. There was no dispute that Bircher was the shooter. In closing, Bircher's counsel argued that Bircher did not intend to shoot Mr. Garrett; that Bircher acted in self-defense, and that Bircher did not intend to hit anyone:

> Mr. David Garrett is truly, truly an innocent victim. Mr. Hale, we will talk about.
>
> * * *
>
> And if Mr. Bircher acted in legitimate complete self-defense, then he is not guilty entirely. If he acted under Mistake of Fact, a fact that he believed, that these folks were coming at him, with the intent to harm him, which if true would have justified it, then he is not guilty of everything.
>
> * * *
>
> That gun has taken on a life of its own. And I say that not to distance Mr. Bircher from the responsibility of pulling the trigger. That is his responsibility. But to let us remember that his intent to fire is not the same as saying his intent to have the shots go where they ended up. And understanding how that can happen without him intending it to happen in

14

the hands of a drunk, scared, inexperienced shooter is important to understand because these crimes are Specific Intent Crimes for the most part. Which means you got to find that he intended to commit these crimes. That he intended to hit Gary Hale. That he intended to kill David Garrett.

In response, the State asserted that Bircher was trying to kill everyone in the area: "From the State's theory and the State's belief and the evidence, he was trying to kill everybody out there. You empty a clip into a crowd of people, you are trying to kill everybody in that kill zone and that is exactly what the Defendant did."

During jury deliberations, the court received a note stating that, "We are confused on the term 'intent.' Does it mean to kill a person or the specific person. Can you please clarify? Thank you."[4] The State asserted that giving an additional instruction on transferred intent would be a proper response to the jury's question:

---

[4] The intent instruction and first degree murder instruction originally given to the jury recited:

> Intent is a state of mind and ordinarily cannot be proven directly because there is no way of looking into a person's mind. Therefore, a Defendant's intent may be shown by surrounding circumstances.
>
> In determining the Defendant's intent you may consider the Defendant's acts and statements as well as the surrounding circumstances. Further, you may, but are not required to, infer that a person ordinarily intends the natural and probable consequences of his acts and/or omissions.
>
> * * *
>
> The Defendant is charged with the crime of Murder of David Garrett. This charge includes First Degree Murder and two types of Second Degree Murder.
>
> First Degree Murder is the intentional killing of another person with willfulness, deliberation and premeditation.
>
> In order to convict the Defendant of First Degree Murder the State must prove that the Defendant caused the death of David Garrett and that the killing was willful, deliberate and premeditated.
>
> Willful means that the Defendant actually intended to kill David Garrett. Deliberate means that the Defendant was conscience of the intent

(continued . . . )

[A]lthough there is only a specific charge in regards to David Garrett, that does not necessarily mean the State cannot argue the intent was to kill all individuals. So the State believes that the – in regards to the question, that refers to transfer intent, and although the State did not initially request a transferred intent Jury Instruction the State believes that the information was presented to the jury where it actually – encapsulates transferred intent.

Defense counsel conversely argued that giving a transferred intent instruction would prejudice his previous argument that Bircher had no intent to shoot Mr. Garrett:

[M]y argument of – in part was – that there was no evidence in this case to support any reason as to why the Defendant would attempt to kill David Garrett. . . . And so that factor was argued to support the fact that the Defendant did not have an intent to kill. Did not have an intent to kill anybody and specifically did not have an intent to kill David Garrett. Had we known that that theory was going to be in the case we would not have put the emphasis on the lack of intent to kill David Garrett as a fact that was – the lack of motive or reason to kill David Garrett in the same way that we did.

The trial judge took a brief recess to review *Cruz* and determined that a supplemental instruction on transferred intent was proper since it was fairly generated from the evidence and not prejudicial to Bircher. The trial judge also recognized that, "there is case law that supports the position of offering additional closing time" and that "the Court is prepared to give that if the parties want it." The State believed it had already "put the argument forward that supports a transfer of intent" and declined to give

---

( . . . continued)

to kill. Premeditated means that the Defendant thought about the killing and that there was enough time before the killing, that may only have been brief, for the Defendant to consider the decision whether or not kill and enough time to weigh the reasons for and against the choice. The premeditated intent to kill must be formed before the killing.

additional closing arguments. Bircher's counsel decided to give additional closing arguments but asked for a day to prepare, which the judge allowed.

After recessing for a day, the court gave the jury an instruction on transferred intent that stated:

> Pending before the Court was Jury Instruction – Jury Exhibit No. 1, which is, "We are confused on the term intent. Does it mean to kill a person or the specific person. Can you please clarify. Thank you".
> The Court is going to give you a Supplemental Instruction on this issue but you are not to consider it in a vacuum, you are to consider it with the rest of the Instructions including the Instruction that I previously gave you, concerning intent. And the Instruction is as follows, the Supplemental Instruction. Defendant is charged with murder, with the murder of David Garrett. One element of this offense is the requirement of intent. Based on the Doctrine of Transferred Intent, intent is present if a person attempted to kill one person and as a result of that act accidentally or mistakenly killed another person, such as a bystander or a third person. Under the Doctrine of Transferred Intent the intent is transferred from the intended victim to the unattended victim.
> If after a full and fair consideration of all of the facts and circumstances in evidence, if the State proves beyond a reasonable doubt that the Defendant attempted to kill another person and as a result of that act instead accidentally or mistakenly killed David Garrett the Defendant is deemed to have intended to kill David Garrett.

Bircher's counsel then gave additional closing argument in which he stated that, "to the same extent that [Bircher] did not intend to kill Mr. Garrett, he did not intend to kill anybody. If the bullets ended up on Mr. Garrett they were unintended there and that is further emphasis for the position that we have taken that his – he was not aiming to kill." The jury, nevertheless, thereafter convicted Bircher of the charges of first degree murder of Mr. Garrett and attempted first degree murder of Mr. Hale.

We have defined the doctrine of transferred intent as:

17

> [I]f one intends injury to the person of another under circumstances in which such a mental element constitutes *mens rea*, and in the effort to accomplish this end he inflicts harm upon a person other than the one intended, he is guilty of the same kind of crime as if his aim had been more accurate. In such cases all the components of the crime are present. The psychical element which consists of a certain general mental pattern is not varied by the particular person who may be actually harmed.

*Henry v. State*, 419 Md. 588, 594, 19 A.3d 944, 947 (2011), quoting *Gladden v. State*, 273 Md. 383, 404, 330 A.2d 176, 188 (1974). In explaining the doctrine of transferred intent we have found helpful Clark and Marshall, A Treatise on the Law of Crimes, § 10.06 (6th ed., 1958), which offered the following illustration of "transferred intent":

> Whenever an accountable man kills another intentionally, he is guilty of murder with express malice unless the killing is justifiable or excusable, or unless there are such circumstances of provocation as will reduce the homicide to manslaughter. This principle is applied when a man kills one person when he intended to kill another. For example, if a man shoots at one person with intent to kill him, and unintentionally kills another, or sets poison for one person and another drinks it and dies, it is murder with express malice of the person killed, though he is a friend.

*Harrison v. State*, 382 Md. 477, 499-500, 855 A.2d 1220, 1233 (2004), quoting *Gladden*, 273 Md. at 392, 330 A.2d at 181.

Bircher initially argues before us that the supplemental instruction on transferred intent given in the instant case was not generated by the evidence. He also asserts that the supplemental instruction introduced an entirely new theory of the case that was prejudicial to him, because "[c]ounsel focused exclusively on disproving the specific intent element of the murder charges, and the court's supplemental instruction essentially repudiated the heart of [his] argument." Essentially, Bircher argues that his "lack of specific intent to kill David Garrett was the lynchpin of his defense" and the

18

supplemental instruction undermined this argument by introducing a new theory of the case.

With respect to whether the evidence generated the transferred intent instruction, the testimony adduced at trial reflected that Bircher, on the evening of the shooting, drove around, after having imbibed and having had an argument with his girlfriend at her parents' home in Sykesville, Maryland. While driving, Bircher spotted Cheers Bar and Lounge in Eldersburg, Carroll County. During the course of the evening, Bircher drank beer and spoke to patrons, soliciting cigarettes from a number of persons inside and outside the Bar including Kristen Remmers with whom he also sauntered toward his car in the parking lot.

The testimony also reflected that Ms. Remmers had arrived at the Bar with Gary Hale, who, when he saw Bircher and Ms. Remmers together, yelled out, "hey, you better stay away from him," because he did not recognize Bircher. Later on in the evening, Ms. Remmers returned to Mr. Hale's side, whereupon Mr. Hale said loud enough for Bircher to hear, "Your little boyfriend is about to get his ass beat." Bircher did attempt to leave, but realized that he had left his debit card at the Bar. Afraid for his life, Bircher secured a semiautomatic Glock 23 pistol from his car and began to return to the Bar at which time he spotted Mr. Hale approaching him. Bircher fired a thirteen round magazine in a matter of seconds, hitting Mr. Hale once in the arm and David Garrett eight times. Mr. Garrett had been standing next to Mr. Hale when the shots were fired.

The evidence, thus, reflected that Bircher could have heard Mr. Hale and his threats and been afraid. The evidence also suggested that when Bircher returned to the

19

bar to get his debit card, he may have intended to protect himself by shooting Hale, while the bullets killed David Garrett, the person standing next to Hale.

In determining that the evidence generated a transferred intent instruction, we utilize an abuse of discretion standard, rather than a sufficiency analysis apparently applied by the Court of Special Appeals when they concluded that transferred intent "had no place at Mr. Bircher's trial to begin with." *Bircher v. State*, 221 Md. App. 376, 390, 109 A.3d 153, 162 (2015). Utilizing an abuse of discretion standard, on the other hand, yields the conclusion that the evidence supports the transferred intent instruction given.

With respect to whether the supplemental instruction prejudiced Bircher, moreover, we come to a different conclusion than that which we came to in *Cruz*. In the present case, unlike in *Cruz*, Bircher's counsel did not concede that Bircher intended to shoot Mr. Hale but not Mr. Garrett, an argument that would have "walked into" the transferred intent issue. To the contrary, Bircher's counsel repeatedly emphasized that Bircher did not intend to shoot anyone, did not intend to shoot Mr. Garrett specifically and acted in self-defense. None of these arguments prejudiced Bircher with regard to the giving of a transferred intent instruction because Bircher, according to his counsel, "Did not have an intent to kill anybody."

Like *Horton*, 921 F.2d at 547, guilt of either a direct intent to kill Mr. Garrett and of transferred intent are "so similar that the arguments to be made against guilt are essentially the same under both theories." Essentially, under either theory, Bircher's argument was that he did not intend to shoot anyone, did not intend to shoot Mr. Garrett specifically and that he acted in self-defense. Bircher's counsel reiterated during his

20

supplemental closing the same message: "If the bullets ended up on Mr. Garrett they were unintended there and that is further emphasis for the position that we have taken that his – he was not aiming to kill."

In addition to the lack of any concession regarding transferred intent, Bircher's counsel was given adequate time to prepare additional closing remarks, unlike what occurred in the reversal of convictions in *Cruz*, *Gaskins*, *Millsap* and *Ransom*. A day to prepare and then give additional closing remarks exceed that which was given in those cases.

Bircher, however though, relies on two cases from Texas for the proposition that "under certain circumstances additional argument does not cure the resulting prejudice." In *Moore v. State*, 848 S.W.2d 920 (Tex. App. 1993), Moore was charged with delivering cocaine; during closing arguments his counsel asserted that Moore should be acquitted because he did not personally commit the crime and that the "charge"[5] did not authorize his conviction for the conduct of another. *Id.* at 921. After defense counsel's argument, the State requested the charge "be amended by adding a parties instruction" and the judge gave an instruction on accomplice liability. *Id.*

---

[5] Texas law references "charges" to be given rather than instructions. Tex. Crim. Proc. Code Ann. Art. 36.14 ("Subject to the provisions of Article 36.07 in each felony case and in each misdemeanor case tried in a court of record, the judge shall, before the argument begins, deliver to the jury, except in pleas of guilty, where a jury has been waived, a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury.")

21

The Texas intermediate appellate court reversed Moore's conviction stating that, "Texas law provides, 'After the argument begins no further charge shall be given to the jury unless required by the improper argument of counsel or the request of the jury, or unless the judge shall, in his discretion, permit the introduction of other testimony. . . .'"[6] *Id.* at 921. Thus, the supplemental instruction was error where, "[t]here was no improper defense argument, no request of the jury, and no additional testimony after evidence closed." *Id.* Because the error statutorily was not sufficient to mandate reversal,[7] "unless the error was calculated to injure the defendant's rights or it appears there was not a fair

---

[6] Tex. Crim. Proc. Code Ann. Art. 36.16 provides:

> After the judge shall have received the objections to his main charge, together with any special charges offered, he may make such changes in his main charge as he may deem proper, and the defendant or his counsel shall have the opportunity to present their objections thereto and in the same manner as is provided in Article 36.15, and thereupon the judge shall read his charge to the jury as finally written, together with any special charges given, and no further exception or objection shall be required of the defendant in order to preserve any objections or exceptions theretofore made. After the argument begins no further charge shall be given to the jury unless required by the improper argument of counsel or the request of the jury, or unless the judge shall, in his discretion, permit the introduction of other testimony, and in the event of such further charge, the defendant or his counsel shall have the right to present objections in the same manner as is prescribed in Article 36.15. The failure of the court to give the defendant or his counsel a reasonable time to examine the charge and specify the ground of objection shall be subject to review either in the trial court or in the appellate court.

[7] Tex. Crim. Proc. Code Ann. Art. 36.19 provides:

> Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of the trial.

trial," the court then determined that there had not been a fair trial, because "[d]efense counsel had the right to rely on the original charge":

> Defense counsel had the right to rely on the original charge, which lacked any instruction on parties, and he did so. He told the jury it could not convict appellant for the acts of another, but could only convict if it found appellant personally made an actual or constructive transfer. Counsel made a legitimate argument that was based entirely on the trial judge's written instructions, and it is one the jury may have found persuasive if it followed those instructions, as it was bound by oath to do. Based on the jury charge as it stood when defense counsel argued, the evidence was not overwhelming.

*Id.* at 922-23. Texas's statutes clearly differ from our prevailing norm and Moore's counsel clearly argued the converse of the supplemental instruction.

In *Murray v. State*, 857 S.W.2d 806, 807 (Tex. App. 1993), the other case cited by Bircher, Murray was charged with robbery and the charge submitted to the jury stated that, "A person commits robbery if in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly causes bodily injury to another." Murray had stolen goods from a department store, dropped the goods when chased by security guards and then fought with a guard after being tackled in the ensuing chase. *Id.*

Murray's counsel argued in closing that the injury incurred was not "in the course of committing theft" because Murray had dropped the stolen goods and fled before the fight occurred. *Id.* After closing arguments, the trial judge gave a supplemental instruction stating that, "'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id.* at 808.

23

The Texas intermediate appellate court reversed and concluded that, "the court's repudiation of the very argument it allowed caused the trial to lose its character as an adversary proceeding, greatly jeopardizing Murray's ability to receive a fair trial." *Id.* at 811. The court remarked that the case was similar to *Moore* which "also recognized that this type of action is tantamount to denying counsel the opportunity to make closing argument and denies the defendant a fair trial." *Id.* The *Murray* case, like *Moore*, is clearly inapposite.

In conclusion, the judge did not abuse his discretion in giving the supplemental instruction on transferred intent in the instant case because the evidence generated the instruction and the instruction did not prejudice Bircher.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY. RESPONDENT TO PAY COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.**

IN THE COURT OF APPEALS

OF MARYLAND

No. 33

September Term, 2015

―――――――――――――――――――――――

STATE OF MARYLAND

v.

JACOB BIRCHER

―――――――――――――――――――――――

Barbera, C.J.
Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Jr., Glenn T. (Retired,
Specially Assigned),

JJ.

―――――――――――――――――――――――

Dissenting Opinion by Watts, J., which
Barbera, C.J., and Adkins, J., join

―――――――――――――――――――――――

Filed: February 23, 2016

Respectfully, I dissent. I agree with the Majority that the supplemental jury instruction was generated by the evidence, but I respectfully part company with my colleagues on the issue of whether the instruction was prejudicial.

By its very nature, a supplemental jury instruction—*i.e.*, a jury instruction given after deliberations have begun—has a special potential for prejudice. It is given after the defendant has already decided whether and how to put on a defense and given a closing argument, and after the jury has been given the initial jury instructions based on the evidence in the case. In other words, by the time that a supplemental jury instruction is given, the defendant has already adopted one theory of the case, and it is too late to change course and adopt a different one.

For multiple reasons, a jury is highly likely to place great focus on a supplemental jury instruction given after deliberations have begun. First, it is almost always given in response to a question by a jury. Second, it is given after the initial jury instructions, and, thus, is given outside the context of all of the jury instructions as a whole. And third, although the parties may have the opportunity to present additional argument in light of the supplemental jury instruction, there is no opportunity for the presentation of additional evidence to address any questions or inferences suggested by the supplemental instruction.

Given the high stakes, the attorneys involved, generally, thoroughly discuss with the trial court whether, as in this case, it is warranted to give a supplemental jury instruction—even one that simply clarifies the initial jury instructions—and, if it is warranted, how the supplemental jury instruction should be phrased.

Here, rather than agreeing to the supplemental jury instruction, counsel for Jacob

Bircher ("Bircher"), Respondent, objected to the instruction and informed the circuit court he would have handled the defense otherwise had he known of the supplemental jury instruction. In this Court, Bircher does not contend that the supplemental jury instruction was an incorrect statement of the law or that it was not generated by the evidence. And, I agree with the Majority that the supplemental jury instruction was generated by the evidence. If we were reviewing an initial jury instruction, our inquiry would end there. See Derr v. State, 434 Md. 88, 133, 73 A.3d 254, 281 (2013) ("A trial court must give a requested jury instruction where[:] (1) the instruction is a correct statement of [the] law; (2) the instruction is applicable to the facts of the case; and (3) the content of the instruction was not fairly covered elsewhere in instructions actually given. . . . [I]f, taken as a whole, [jury instructions] correctly state the law, are not misleading, and cover adequately the issues raised by the evidence, [then] the defendant has not been prejudiced[,] and reversal is inappropriate." (Citation omitted)).

For good reason, supplemental jury instructions, however, are held to a higher standard than initial ones are. In other words, an appellate court may conclude that giving a supplemental jury instruction was an abuse of discretion even though the supplemental jury instruction was a correct statement of law, was generated by the evidence, and was not fairly covered by the initial jury instructions. An appellate court may conclude as much where the supplemental jury instruction prejudices the defendant. See Cruz v. State, 407 Md. 202, 204, 963 A.2d 1184, 1186 (2009) ("The [trial] court's supplemental instruction, though generated by the evidence, was not appropriate under Maryland Rule 4-325 [(Instructions to the Jury)] because defense counsel's reliance on the [trial] court's pre-

closing argument instructions resulted in prejudice to [the defendant].").  This is because a supplemental jury instruction has a special and high potential for prejudice.

The Cruz case offers an clear example of such prejudice.  In Cruz, id. at 220, 963 A.2d at 1195, this Court held that a trial "court abused its discretion in giving the jury a supplemental instruction on attempted battery during the jury's deliberations, because the [trial] court at the close of evidence indicated that it would only instruct the jury on battery, the sole theory of second degree assault elected by the State."  At trial, a State's witness testified that the defendant hit the victim with a baseball bat, whereas a defense witness testified that the defendant used the bat to chase away the victim, who fell down while running away.  See id. at 205-06, 963 A.2d at 1186.  At the prosecutor's request, the trial court initially instructed the jury only on battery.  See id. at 206-07, 963 A.2d at 1187.  During the defendant's closing argument, the defendant's counsel "strategically conceded in closing that he 'went after' [the victim] with the bat, thinking that attempted battery was off the table."  Id. at 209, 963 A.2d at 1188.  While deliberating, the jury submitted the following note: "'[I]s Y falling on a sidewalk & hitting head while being chased by a bat by X, an assault by X on Y?'"  Id. at 207, 963 A.2d at 1187 (brackets in original).  Over the defendant's objection, the trial court instructed the jury on attempted battery.  See id. at 207-08, 963 A.2d at 1187-88.

Upon review, this Court stated:

> Although courts must respond with a clarifying instruction when presented with a question involving an issue central to the case, a supplemental instruction is not appropriate under Md. Rule 4-325 if given in response to a question that has absolutely nothing to do with the case as presented to that jury.  The jury should be limited in its deliberations to the

issues and evidence as presented to it and should not be given answers to inquir[i]es which reach outside of the case as presented at trial.

Id. at 211, 963 A.2d at 1189 (brackets, citations, and internal quotation marks omitted).

Applying these legal principles to facts in Cruz, this Court explained:

[The defendant] relied on [the State's battery] theory in tailoring his closing argument and suffered actual prejudice from the supplemental attempted battery instruction. . . . It is unlikely that [the defendant]'s counsel would have acknowledged that [the defendant] "went after" [the victim] with the bat had the State elected to pursue an attempted battery theory of assault at the close of evidence. In stating that [the defendant] "went after" the victim, defense counsel essentially conceded the defendant's intent to make contact and walked into an attempted battery verdict. Had [the defendant] known that the jury would be instructed on this assault theory, his counsel would likely not have hinged his defense on the contact element of battery and, instead, would have emphasized that [the defendant] never intended to bring about harmful physical contact when he grabbed the bat and chased [the victim]. . . . The court's supplemental attempted battery instruction, though generated by the evidence, was not appropriate under M[aryland] Rule 4-325 because it was given after closing arguments and thereby deprived [the defendant] of an adequate opportunity to defend against the new theory of culpability. The [trial] court, when presented with the jury's question pertaining to the new theory of culpability, should have told the jurors that they were to apply the law on which they had been instructed. At the close of evidence, the State would have been entitled to an instruction on any version of second degree assault as each theory constituted the "applicable law" under [Maryland] Rule 4-325. But once the State locked into the battery theory of assault, and declined an instruction on the other theories, [the defendant] had a right to rely on the State's elected theory of culpability and tailor his closing argument accordingly.

Id. at 220-22, 963 A.2d at 1195-96.

Notably, we rejected the State's contention that the jury instruction on attempted battery entitled the defendant only to additional argument, which the defendant did not request:

We are not persuaded that a supplemental closing argument would have cured the problem created by the court's eleventh hour insertion of this new

- 4 -

theory of culpability. Even in a supplemental closing argument, defense counsel could not eradicate her earlier concession that [the defendant] "went after" [the victim] with bat in hand. With these two words, counsel conceded and emphasized the first two of three elements of attempted battery, an offense counsel thought had been withdrawn from consideration.

Id. at 216, 963 A.2d at 1192 (citation omitted).

Here, reversal is warranted because, as the defendant in Cruz did, Bircher made prejudicial concessions that he might not have made had he had the benefit of knowing in advance about the supplemental jury instruction and did not pursue available defenses because he was unaware that the supplemental jury instruction on transferred intent would be given. Specifically, Bircher testified on his own behalf that he bought a Glock .40 caliber pistol "for self[-]defense." On July 13, 2012, he left his residence and drove to Cheers Lounge. He left his pistol inside his car, entered Cheers Lounge, drank some beer, and spent some time with Kristen Remmers ("Remmers"). While Bircher was outside of the lounge smoking a cigarette, Gary Allen Hale, Sr. ("Hale") said to Remmers: "Your little boyfriend is about to get his ass beat." Another person said: "Well he will be lucky if that is all that he gets." Bircher decided that "it [wa]s probably time to go." He returned to his car, but realized that he had left his debit card inside Cheers Lounge. As a result, he put his pistol into his pocket and walked back toward Cheers Lounge. A group of people, **including Hale**, were near Cheers Lounge's entrance. Hale said something, but Bircher could not hear what Hale said. Hale made "a head gesture[.]" All of the people in the group looked at Bircher "at the same time" and then began walking towards him. Bircher was afraid that he was going to get "beaten to death[.]" **Bircher pulled out his pistol and began "firing in between people."** (Emphasis added). **He intended "to scare everybody**

**away[,]" not to shoot anyone.** (Emphasis added). **He ran out of bullets, returned to his car, and drove away.**

It was undisputed that Bircher shot Hale, who survived, and David Garrett ("Garrett"), who died. During Bircher's counsel's closing argument, he stressed that the State had offered no reason as to why Bircher would intend to kill Garrett. In other words, Bircher's counsel argued that Bircher was not guilty of the murder of Garrett because Bircher did not intend to kill Garrett.

During deliberations, the jury submitted a note that stated: "We are confused on the term 'intent.' Does it mean to kill <u>a person</u> or <u>the specific</u> person. Can you please clarify. Thank you." (Second underlining in original). Bircher's counsel argued that a supplemental jury instruction on transferred intent would be prejudicial because a very important part of Bircher's defense to the murder count was to demonstrate that Bircher had no intent to kill Garrett. Bircher's counsel argued that the State had failed to request an initial jury instruction on transferred intent, and that the initial jury instructions were an integral part of how he had formulated his closing argument, *i.e.*, limiting the argument to Bircher's lack of intent to kill Garrett. Tellingly, Bircher's counsel stated: "Had we known that th[e] theory [of transferred intent] was going to be in th[is] case[,] we would not have put the emphasis on . . . the lack of motive or reason to kill [] Garrett in the same way that we did."

Over Bircher's objection, the circuit court gave the following supplemental jury instruction:

Defendant is charged . . . with the murder of David Garrett. One element of

this offense is the requirement of intent. Based on the [d]octrine of [t]ransferred [i]ntent, intent is present if a person attempted to kill one person[,] and[,] as a result of that act[,] accidentally or mistakenly killed another person, such as a bystander or a third person. Under the [d]octrine of [t]ransferred [i]ntent[,] the intent is transferred from the intended victim to the un[inte]nded victim. If[,] after a full and fair consideration of all of the facts and circumstances in evidence, [] the State proves beyond a reasonable doubt that the Defendant attempted to kill another person[,] and[,] as a result of that act[,] instead accidentally or mistakenly killed David Garrett[,] the Defendant is deemed to have intended to kill David Garrett.

(Paragraph break omitted).

I am not convinced that this supplemental jury instruction caused no prejudice to Bircher. Bircher would likely have made different strategic choices during the trial if he had had the benefit of knowing in advance about the supplemental jury instruction and had known it would be material to adduce evidence of his lack of intent to kill any person in the crowd—Hale or any other member of the crowd. Bircher's counsel advised the circuit court as much. Bircher testified that he shot into the crowd to scare away the crowd. Although Bircher did not explicitly testify that he had the intent to kill anyone in the crowd, the jury may reasonably have inferred that by deliberately shooting into the crowd, Bircher had the intent to kill a person in the crowd, *i.e.*, Hale or someone else. The instruction on transferred intent permitted the jury to convict Bircher of murder on the theory that he intended to kill a person other than Garrett. Had Bircher known in advance of the supplemental jury instruction, Bircher might not have elected to testify that he fired his pistol in the direction of a group of people that included Hale and others. Bircher's counsel would not have hung the defense on the limited assertion that Bircher did not intend to kill Garrett; in doing so, Bircher's counsel's theory of the case did not address the potential

finding that Bircher intended to kill Hale or someone else in the crowd, but ended up accidentally shooting Garrett.

The Majority concludes that the supplemental jury instruction did not prejudice Bircher because "Bircher's counsel did not concede that Bircher intended to shoot [] Hale but not [] Garrett[.]" Maj. Slip Op. at 20. Although this is true, the fact remains that Bircher's counsel relied on the assertion that Bircher did not intend to kill Garrett and allowed Bircher to testify that he shot into a crowd that Hale—a person who had threatened Bircher earlier—was a part of. As such, Bircher's counsel's assertion that Bircher did not intend to kill Garrett essentially became pointless after the supplemental jury instruction, since the instruction permitted the jury to find that Bircher intended to kill Hale or anyone else in the crowd, and ended up accidentally shooting Garrett.

Although a group of judges may be able to determine that neither Bircher nor his counsel made an explicit concession as to his intent to kill Hale or another member of the crowd, it is less clear that a jury of lay people would necessarily have discerned the same. Indeed, after hearing the supplemental jury instruction, the jury could very well have believed that Bircher's counsel had been hiding the ball all along by focusing on Bircher's lack of intent to kill Garrett and ignoring the circumstance that Bircher shot into a crowd of people, including Hale—that belief would have been fatal to Bircher's case.

In my view, the Majority's holding is worrisome because it condones a

supplemental jury instruction: (1) that the State did not initially request;[1] (2) to which the defendant objected; and (3) that essentially undermined the defendant's theory of the case. Although the goal of any criminal trial is to unearth the truth, a trial—even one involving serious criminal charges such as this—must be fair for the defendant; and, in this case, the supplemental jury instruction acted as something of an unfair ambush on the defense.

For the above reasons, respectfully, I dissent.

Chief Judge Barbera and Judge Adkins have authorized me to state that they join in this opinion.

---

[1]The supplemental jury instruction could easily have been requested by the State in advance. The record reveals no logical reason for the State's failure to have requested the instruction. The concern is that, by permitting a supplemental jury instruction under these circumstances—*i.e.*, an instruction that could easily have been requested by the State but was not, and was given over the objection of the defendant, and where the potential for prejudicial was evident—we invite similar occurrences in the future and leave it for appellate courts to parse the facts of the case to determine whether the defendant may have been prejudiced.